SOMMERVILLE, J.
The Legislature, in 1838, in Act No. 76, p. 79, incorporated the Pine Grove Academy, in the parish of Caldwell. In the first section of the act 15 persons were named and constituted “a body corporate and politic” by the name and style of the trustees of the Pine Grove Academy; they were given perpetual succession; the power to sue and be sued; and all such other- powers as were exercised and possessed by similar corporations in the state. In section 4, the trustees were given full authority to fill all vacancies that might be caused in their own body by death or otherwise. In section 2, it was provided that the board of *38 trustees should select a board of directors, who were to have charge of the academy, which was evidently an educational institution, incorporated for the benefit of the people of Caldwell parish. In section 3, an appropriation'was made to the academy by the state. Section 5 gave to the board of directors the right to fix the place of location of the academy, where it would be conducive to the interests of the citizens of the parish of Caldwell generally. Sections 6 and 7 provided for the incorporation of the trustees of the Providence Academy of Carroll parish, with similar rights and privileges accorded to the Pine Grove Academy, and provided for an annual appropriation by the state of $1,000.
The right to acquire property was not given to these institutions under their respective charters; but, under the provisions of article 433 of the Civil Code, they might possess an estate, and have a common treasury for the purpose of depositing their money; and they were capable of receiving legacies and donations.
These, and other similar, institutions of learning, were the forerunners of the system of public education, which has become one of the functions of the government of the state. The public schools were first recognized in the Constitution of 1845; and provision was made for their support in article 135 of that instrument; and, in article 136, it was provided:
“All moneys arising from the sales which have been or may hereafter he made of any lands heretofore granted by the United States to this state, for the use of a seminary of learning, and from any kind of donation that may hereafter be made for that purpose, shall be and remain a perpetual fund, the interest of which, at six per cent, per annum, shall be appropriated to the support of a seminary of learning for the promotion of literature and the arts and sciences, and no law shall ever be made diverting said fund to any other use than to the establishment and improvement of said seminary of learning.”
And in article 254 of the present Constitution the school funds of the state are composed, among other things, “of lands and other property heretofore or hereafter bequeathed, granted, or donated to the state for school purposes.”
In the charter of the Pine Grove Academy no provision Was made for the liquidation of the corporation, and that liquidation is the matter presented for consideration in this case.
[1] Under the law, as expounded in the Dartmouth College Case, 4 Wheat. 518, 715, 4 L. Ed. 629, a contract was entered into between the state of Louisiana and the Pine Grove Academy, the terms of which are embraced in the act of 1838. This contract is inviolable by the state.
But the defendants, in their brief, say:
“This academy flourished for a great many years, or until, by reason of shifting of population, it was found impossible to continue the school in the place in which it was originally located.”
Evidently, the corporation ceased to actively exist, at some time prior to the year 1860; but the court does not pass upon that point at this time.
In the meantime, in addition to the appropriation made by the state of Louisiana, it appears that certain individuals, by the names of Hyams, Chew, McCoy, and Daniel W. Cox, owners of land in the Maison Rouge grant, donated, in or about the year 1839, between 5,000 and 6,000 acres of land in that grant to the Pine Grove Academy. It appears that, in a suit between the United States and the claimants under the Maison Rouge grant, the Supreme Court of the United States declared the grant to be invalid. Thereafter the, Congress of the United States, in chapter 161, July 29, 1854, passed “An act for the relief of the Pine Grove Academy, in Louisiana.” And, in that act, the Congress confirmed the title of the Pine Grove Academy to the lands in question and directed that patents be issued to the trustees for said lands, after a legal survey, under the instructions *40 of the surveyor general of Louisiana. 10 U. S. Stats, at Large, p. 802.
Some of the lands thus donated hy the government of the United States to the Pine Grove Academy for educational purposes are the same as those sought to be recovered by the board of directors of the public schools of Caldwell parish from the Louisiana Central Lumber Company, and reported in the decision in the case in 136 La. 337, 67 South. 23. And, doubtless, the recovery of these same lands, perhaps with others, or the proceeds of lands, is the ultimate object of the present suit.
In incorporating the board of trustees of the Pine Grove Academy with perpetual succession, the Legislature constituted it “a body corporate and politic.” It was an institution of learning, for the benefit of the people of Caldwell parish, the education of whom was recognized as a public duty. But, at that time, in 1838, the state had not formally assumed the obligation of educating the youths. It made donations to the Pine Grove Academy and other similar institutions, to assist them in this public work. And that is the reason, doubtless, for constituting the academy, or the trustees of the academy, “a body corporate and politic.” It was charged with the performance of a public duty.
The term “body corporate and politic” is frequently used in connection with a municipality governed by a legislative act; and, we take it, the Legislature denominated the trustees of the Pine Grove Academy’ “a body corporate and politic,” for the reason that it, too, was charged with corporate and political powers, restricted to the education -of the people of Caldwell parish. The institution thus became a quasi public or political corporation, receiving a part of its endowment from the state treasury, and being •charged with the obligation of educating the people of Caldwell parish.
“Bodies politic and corporate have ‘been known to exist as far back at least as the time of Cicero, and Gaius traces them even to the laws of Solon of Athens, who lived some five hundred years before. Pothier’s Pand. of Just, bk. 3, p. 109 (Paris Ed. 1823). These associated bodies, or communities of individuals with certain rights and privileges belonging to them by law in their aggregative capacity, were styled by the Romans ‘collegium’ and sometimes ‘universitas,’ as ‘collegia tibicinum,’ ‘collegia aurificum,’ ‘collegia architeetorum,’ or society, corporation, or community of flute players, goldsmiths, architects, etc. Ib., bk. 20, p. 110,”
And Lord Coke has defined “a body politic” as:
“A body to take in succession, formed as to its capacity by policy, and is therefore called by Littleton (sections 4, 13) a ‘body politic.’ ”
“It is called a ‘corporation’ or ‘body corporate,’ because the persons are made into a body politic, and are of capacity to take, grant, etc., by a particular name.” Words & Phrases, 820.
And in the case of Augusta v. Augusta Water District, 101 Me. 148, 63 Atl. 663, 664, a body politic and corporate, created for the sole purpose of performing one or more municipal functions, was held to be a quasi municipal corporation, and in common interpretation should be deemed a municipal corporation. 1 Words & Phrases (2d Series) p. 1052.
The Legislature of the state evidently acted upon the theory that the trustees of the Pine Grove Academy constituted a quasi public corporation, charged with special public duties; for, in 1860, after the corporation had apparently ceased to exist, by Act No. 195 of that year, p. 141, it reorganized the Pine Grove Academy, naming a new board of trustees; it transferred all the property of the old institution to the new one, and shortened the term of the existence of the new one to 25 years.
As the corporation had ceased to exist prior to 1860, and had not been judicially dissolved, the Legislature might have, under article 447 of the Civil Code, dissolved said body; providing in the act that individuals who had advanced money or had engaged their property on the face of the contract ex *42 isting between the corporation and the state should be reimbursed all such advances, and by making full indemnity to such individuals, if there were any such. Or, the Legislature might have forfeited the charter of the institution, on the ground that it had abused its privileges, and had refused to accomplish the conditions on which such privileges were granted.
The record, as it is made up, does not disclose whether there were individual donors or not. The only donations mentioned were from the state treasury and lands granted by the United States government.
Nevertheless, the Legislature did not dissolve the corporation judicially, or forfeit the charter; but, as has just been stated, in 1860, the Legislature passed Act No. 195, entitled:
“An act to amend ‘an act to incorporate the Pine Grove Academy, in the parish of Caldwell, and for other purposes.’ ”
This act reincorporated the Pine Grove Academy, again naming 15 trustees, some of whom were members of the first hoard, apparently. One of the members of the newly formed board bears the name of one of the defendants in this cause; and it would appear that he has been acting as a trustee of the institution by virtue of said act of 1860, which act he and his codefendant now attack as being unconstitutional.
[2] Defendants claim that the act of 1860 violates the contract evidenced by the act of incorporation of 1838. But, if it should be hereafter shown that they hold authority as trustees of the academy under the act of 1860, they cannot be heard to assail the validity of the act.
In 1860, when the Legislature acted in the matter, the Pine Grove Academy had ceased to exist as an actual educational institution. The only reason which induced the Legislature to pass act 195 of 1860 was that the Pine Grove Academy had theretofore failed to accomplish the conditions upon which it had been given corporate life. It had closed its doors. It had not been dissolved; and the Legislature had certainly the right to reorganize that institution under a new charter, and give it new life, and, at the same time, vest in the new corporation the title to the property owned by the former institution, and which had been granted to it for the benefit of the people of Caldwell parish.
The condition, of affairs in such case was quite different from those set forth in the Dartmouth College Case, where the college was a living corporation, exercising all the powers which had been conferred upon it, and holding the property donated by private individuals to it. The conditions are different from those existing in the case of Montpelier Academy Trustees v. George et al., 14 La. 395, 33 Am. Dec. 585, which was also a going corporation, exercising all of its powers, and in the possession of the property donated specifically to it. In both of those cases it was held that the law protected the corporations in their contract rights, which were conferred upon them in their respective charters.
In the case of the Pine Grove Academy, the Legislature found a defunct corporation invested with property; and it found it necessary, or for the convenience of the public interest, that the corporation should be reorganized and re-established for the purpose of carrying out the original object of the corporation; and it acted, by amending the original act of incorporation, and by giving it life for an additional 25 years.
In thus acting, the state did not violate the contract rights of the corporation or of any individual who had donated property to the institution under its charter. It would appear that the only property held by the old corporation was the land donated to it by the national government for educational purposes ; and the act of the Legislature sought, in 1860, to continue the use of that land for the *44 object for which, it was donated by the government. It did not seek to dispossess the board of trustees of the older institution, because they did not appear to have been holding or acting for the institution. At all events, the trustees did not at that time object to the action of the state, and it appears that some of them were named as trustees in the act of 1860. And it would appear that, after the lapse of nearly 80 years, they and their successors are not now objecting. As was stated before, it rather appears that the defendants, who are objecting in this suit, were made trustees by the act of the Legislature of 1860.
It further appears that the Pine Grove Academy actually ceased to exist before the expiration of its charter, as fixed in the act of 1860; which would have been in the year 1885.
A few years ago, the board of directors of the public schools of Caldwell parish, in charge of the public education of the children of that parish, conceiving itself to be the custodian of the fund for such purpose in said parish, instituted suit against the Louisiana Central Lumber Company, which company held title to some of the property which formerly belonged to the Pine Grove Academy, for the recovery of those lands. It was held in that ease that the plaintiff had no proprietary interest in the subject or object of the suit, no administrative authority in the premises, and no legislative authority or implied right to prosecute the suit; and the suit was dismissed. 136 La. 337, 67 South. 23.
Thereupon the board of school directors of Caldwell parish went to the Legislature, and under Act No. 24, E. S., 1915, p. 54, it was authorized to provoke a judicial .liquidation of the property, funds, and affairs of the Pine Grove Academy. In that act it was declared that the Pine Grove Academy, incorporated in 1838, was reincorporated in 1860; that the new corporation was endowed with all the property belonging to the old corporation; that the charter thereof had been limited to 25 years; that the limitation had expired; that the corporation became legally defunct at the expiration of 25 years, and had actually ceased to exist long before that time; that no one was authorized or capacitated to represent or act for it after that time; and that its affairs had remained unliquidated and unsettled. It was further declared that there were no stockholders or creditors of the corporation; and “it being a matter of public and general interest that the wise, benevolent purposes of the original donors and Congress to aid and encourage the diffusion of public enlightenment and education by furnishing adequate remedy for the recovery, preservation and proper use of the property of the derelict corporation,” the board of school directors of Caldwell parish was “granted the right of action to provoke a judicial liquidation of the affairs, funds and property of the late corporation known as the Pine Grove Academy of Caldwell parish,” etc.
In the original charter of Pine Grove Academy, as well as in the charter reincorporating said academy, there was no provision made for liquidation. Act No. 24, E. S., 1915, contains the first provision of law relative to the liquidation of said corporation. The Legislature was the only body competent to direct the liquidation.
After this act had been passed by the Legislature, three persons met, June 19, 1915, as a quorum of the board of directors of the Pine Grove Academy, and called a meeting of the board of trustees of the academy for June 21, 1915, for the purpose of deliberating upon the question as to whether or not the above-named corporation should be dissolved and its affairs liquidated, and for the purpose of electing the liquidators, if that course should be determined upon, and to transact such other business as might law *46 fully come before tbe meeting. On June 21, 1915, the same three persons met, who appeared to hold the proxies of three other per-, sons, and held a meeting of the trustees. A resolution was adopted, declaring:
“That it is the sense of the board of trustees that the corporation, known as the Pine Grove Academy, be, and the same is hereby, dissolved.”
“That the assets belonging to it be used and distributed for educational purposes, and for the benefit of the inhabitants of Caldwell parish, after deducting the expenses of dissolution, liquidation and distribution of the proceeds of said corporation. That in order to carry out the purposes of this resolution, J. J. Meredith and R. R. Redditt (the two defendants) be, and they hereby are elected as liquidators of said corporation with full power and authority to take charge of all the remaining assets belonging to the said corporation,” etc.
The two persons thus named as liquidators were confirmed by the district judge.
Thereupon this suit was brought by the board of directors of the public schools of Caldwell parish. In its petition, it asks that J. J. Meredith and R. R. Redditt be cited, and, after due proceedings, that ■ their appointment as liquidators of the academy be decreed to be absolutely null and void; and that the appointment of W. L. White, named by the plaintiff, be confirmed as liquidator of the academy.
The suit is a contest between two sets of liquidators of the corporation for control.
J. J. Meredith and R. R. Redditt, styling themselves as judicial liquidators, excepted to the petition of plaintiff on various grounds. Among them was as to the right of plaintiff to question the control or liquidation of the affairs of the Pine Grove Academy for any cause.
The exceptions were sustained, and the suit was dismissed.
[3] The two charters of the Pine Grove Academy do not provide for the dissolution of the corporation. Therefore the board of trustees, whether of the first or second corporation, were without authority to declare the corporation dissolved. Neither was there provision in either charter for the liquidation of the affairs of the corporation, and the board of trustees were therefore without authority to undertake the liquidation of it. As the corporation was a creature of the Legislature, and as no contract rights under the several charters were violated by the Legislature, it (the Legislature) was the only one authorized to provide for, and to fix the manner of, the liquidation of this defunct corporation. There were certainly no stockholders to be consulted; and, if there are any individuals or persons who are creditors in any form of the Pine Grove Academy, their interests are not affected by the decision in this cause, as they are not parties thereto. The exceptions should have been overruled.
It is therefore ordered, adjudged, and decreed that the judgment herein rendered maintaining the exceptions filed by the defendants is annulled, avoided, and reversed; and it is now ordered that said exceptions are overruled, and that the trial of this case be proceeded with in accordance with law.t! Costs of appeal to be paid by defendants.
O’NIELL, J., concurs in the decree.