(90 South. 553)

No. 23604.

## MARTIN v. LOUISIANA CENTRAL LUMBER CO.

(Nov. 29, 1920. On Rehearing, Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Real actions ⬉7(2) — Petitory action; plaintiff must recover on strength of his own title.**

In a petitory action for the recovery of land, plaintiff has the burden of proving his case and must stand or fall on the strength of his own title.

2. **Estoppel ⬉29(1)—Defendant estopped to deny plaintiff's title at time of deed under which it claimed by reason of earlier alienation.**

Where defendant in a petitory action alleged a chain of title springing from an incorporated academy of which plaintiff was liquidator after an alleged alienation under a writ of fi. fa., and the evidence showed that title to every tract involved emanated from the academy after such alleged judicial transfer, defendant was in no position to question plaintiff's title prior to the execution of the deeds under which it claimed, and evidence of the sale under fi. fa. should have been excluded.

3. **Estoppel ⬉114—Not necessary that estoppel of grantee to deny grantor's title be specially pleaded.**

Where in a petitory action by the liquidator of an incorporated academy defendant pleaded and attempted to prove a chain of title springing from the academy after an alleged alienation under a writ of fi. fa., it was not necessary that the estoppel against its right to deny the academy's title at the date of the conveyance under which it claimed should be specially pleaded.

4. **Real actions ⬉7(2)—Petitory action; liquidator of academy held to have sufficient title as against one having no title notwithstanding sale on fi. fa.**

Where the legal title to land donated to an incorporated academy at the time of a sale of its property and assets under a fi. fa. was in the United States government, which subsequently by act of Congress conveyed it to the academy, the sale under fi. fa. could not defeat a recovery by the liquidator of the academy from one disclosing no title in itself under the fi. fa., especially where it was estopped to set up such sale because claiming under a later title.

5. **Schools and school districts ⬉5—Donation to academy held not to prohibit alienation.**

A donation of a large tract of land, consisting of a broken area of poor soil valuable mainly for its timber, to have and to hold such land for the only proper use and behoof of the academy forever, did not prohibit an alienation of the property by the academy.

6. **Adverse possession ⬉81—Prescription of 30 years held to cure absence of showing of authority of one conveying for academy.**

Where the board of directors of an academy adopted a resolution authorizing the register and receiver of the academy to make and execute good and sufficient titles to lands belonging to it, and land was thereafter conveyed by a person describing himself as register or receiver, the absence of anything to show his appointment was cured by the prescription of 30 years; those claiming under the conveyance having had possession for more than 50 years.

7. **Adverse possession ⬉71(3) — Prescription; absence of deed in chain of title held cured by prescription of 10 years.**

Where a deed under which defendant and its predecessors in title had held possession of and cultivated land for more than 50 years referred to a conveyance from the register and receiver of an academy formerly owning the land, though there was no other proof of such a conveyance, the defect was cured by the prescription of 10 years; the property having been held under a title translative of property.

8. **Schools and school districts ⬉5—Alienation not prohibited by deed forbidding alienation of land.**

Prior to the Act No. 188 of 1904, making the laws of real property applicable to standing timber, a deed to an incorporated academy, even though forbidding an alienation of the soil or the land itself, did not prevent a sale of the timber.

**9. Real actions ⬤═8(1)—Petitory action; payments not made under conveyance not recoverable in reconvention.**

In a petitory action to recover land, where defendant showed no conveyance to itself under which payments on the purchase price and the payment of taxes were made, it was not entitled to recover such payments in reconvention.

**10. Schools and school districts ⬤═5—Academy in liquidation by board of school directors not estopped to recover property by receipt of taxes and proceeds of sales by the board.**

Act No. 24 of 1915 (Ex. Sess.), authorizing the board of public school directors of Caldwell parish to provoke a liquidation of the affairs of Pine Grove Academy, does not so identify the defunct corporation with the board as to estop the corporation from recovering property belonging to it merely because the board had received taxes on portions of the property assessed to third persons or had received the proceeds of sales by the police jury or school board of property to which defendant showed no conveyance to itself.

On Rehearing.

**11. Limitation of actions ⬤═95(1)—Prescription held not to run after expiration of charter until appointment of liquidator.**

Under Civ. Code, art. 3537, as amended by Act No. 33 of 1902, providing that the prescription of one year runs from the date knowledge of damage to land, timber or property is received by the owner where an academy's charter expired in 1885, and there was no one authorized to sue on its behalf until the appointment of a judicial liquidator, the prescription did not commence to run until the time such appointment became final.

**12. Schools and school districts ⬤═6—Tenure of officers lapsed with expiration of charter of academy.**

The tenure of the officers, trustees, and directors of an incorporated academy lapsed with the expiration of its charter.

**13. Trespass ⬤═52 — Damages limited to stumpage value of timber manufactured.**

In a petitory action for the recovery of land and for the value of the timber removed therefrom, plaintiff can only recover the stumpage value; the manufactured value being ultra petitionem.

**14. Taxation ⬤═213 — Property of academy held exempt from taxation as "public property."**

The Pine Grove Academy, incorporated by Act No. 76 of 1838, and to which the United States government conveyed public lands, was a public institution, and its property was exempt from taxation as "public property" under Const. art. 230.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public Property.]

**15. Taxation ⬤═213—Property owned by quasi public corporation and used for public purposes is "public property."**

Property dedicated to a public use, the revenues of which serve a public purpose, is "public property" within Const. art. 230, relative to exemptions, though the title is not in the public, but in a quasi public corporation.

**16. Real actions ⬤═8(1) — Petitory action; taxes paid by defendant not recoverable in reconvention when plaintiff's property exempt.**

In a petitory action by the liquidator of an incorporated academy whose property was exempt from taxation to recover land, defendant cannot recover taxes paid by it in reconvention; such payment not being a necessary expense for the preservation of the property.

Appeal from Thirtieth Judicial District Court, Parish of Caldwell; F. E. Jones, Judge.

Action by George T. Martin, judicial liquidator of the Pine Grove Academy, against the Louisiana Central Lumber Company. From a judgment for defendant, plaintiff appeals. Judgment for plaintiff on rehearing for a part of the land sued for and damages.

M. C. Thompson and George Gunby, both of Monroe, for appellant.

Stubbs, Theus, Grisham & Thompson, of Monroe, for appellee.

DAWKINS, J. This is a petitory action for the recovery of certain lands and for the value of the timber removed therefrom, situated in the parish of Caldwell. Plaintiff sues as the liquidator of Pine Grove Academy, having been appointed by the lower

court for that purpose pursuant to Act No. 24 of the Extra Session of the Legislature of 1915. He alleges that the lands in contest form a part of certain tracts donated to Pine Grove Academy by James McCoy, Robert Chew, and Henry M. Hyams January 7, 1839, and by Daniel W. Coxe on May 2, 1839, for school purposes only, that said donations were made expressly nontransferable, and that said titles were confirmed by the United States government by act of Congress and patents subsequently issued therefor. Plaintiff further alleges that in 1903 certain individuals, acting without right or authority in law, pretended to alienate a portion of said lands now possessed and claimed by defendant, and that other portions were attempted to be alienated at other times in similar manner to other persons, against whom petitioner reserved the right to proceed later, and that defendant holds in bad faith and is liable as a trespasser. He prays that the property in dispute be adjudged to belong to Pine Grove Academy in liquidation and for damages in the sum of $10,000.

Defendant excepted to the petition on the ground that plaintiff was without right or authority to prosecute the suit, in that act No. 24 of 1915 is unconstitutional, because it was a special act and contained no recital that notice of the intention to apply for its passage had been given, as required by article 50 of the state Constitution, which exception was overruled, and defendant further excepted that plaintiff is without right or cause of action to sue for the lands in dispute. The exception of no cause of action was overruled, and that of no right of action was referred to the merits.

Defendant then answered, admitting that Pine Grove Academy had at one time owned the property in question, but averred that it had been subsequently divested of all interest therein. Defendant further alleged ownership in itself, setting forth at length its

150 LA.—6

chain of title, denied that it had cut timber of the value alleged, and pleaded the prescription of one year in bar of plaintiff's claims on that score. It also pleaded the prescriptions of 10 and 30 years acquirenda causa, 30 years' abandonment by plaintiff, and, as to some of the property, three years' prescription under article 233 of the Constitution, relative to tax sales. In the alternative it also averred that, if it should be found that defendant did not own the property, then plaintiff could not recover for the reason that the same is now owned by the police jury of Caldwell parish.

Defendant further averred that this suit is being prosecuted for the benefit of the school board of Caldwell parish, which has accepted and used $3,053.75 of the proceeds of said lands, thereby ratifying and confirming said sales; that defendant had paid out a large amount in taxes on said property, and for all of which it should be permitted to recover in reconvention, in event plaintiff should prevail. It called in warranty Herbert Ellis, W. F. Whetstone, A. B. Hundley, G. L. Alford, Wm. T. Hardie & Co., Wm. T. Hardie, and Eben Hardie and prayed for appropriate relief against said warrantors in event of eviction.

Thereafter defendant filed a plea attacking the constitutionality of Act No. 195 of 1860, reincorporating the Pine Grove Academy, as well as Act No. 24 of 1915, on various grounds, which will be referred to hereafter. It also filed a further plea of estoppel, based mainly, upon the averment that the school board for whose benefit it was alleged this suit was brought, had accepted and used the funds referred to, and upon the further ground that in a certain deed by persons acting for Pine Grove Academy, conveying a portion of the lands, the previous sale of the timber had been recognized and confirmed, and upon the further charge that the school board had accepted and used the school taxes

paid upon said property by defendant as owner.

The defenses of the warrantors were, in the main, similar to those of defendant, Louisiana Central Lumber Company.

The case was tried on its merits, and there was judgment below overruling the pleas and exceptions and in favor of defendant rejecting plaintiff's demands. Plaintiff appeals.

Defendant has filed in this court a motion praying that the judgment of the lower court be affirmed, and, in the alternative, if plaintiff should be decreed the owner of the property in dispute, that it have judgment in reconvention as demanded in its answer. It has also filed here a plea of prescription of five years under article 3543 of the Civil Code, with reference to judicial sales.

### The Facts.

By Act No. 76 of 1838, p. 79, the Legislature created the Pine Grove Academy, making its board of trustees a body corporate or politic, with perpetual succession, domiciliated in the parish of Caldwell, and in the same act appropriated the sum of $1,500 in aid of said school. January 7, 1839, James McCoy, Robert Chew, and Henry M. Hyams donated to said academy 40 acres of land as a site for the school building; and on May 4th of the same year Daniel W. Coxe, of Philadelphia, also donated to the trustees of said school some 5,000 acres additional, all forming a part of what was then known as the Maison Rouge grant. A short while thereafter it was decided by the Supreme Court of the United States that the entire Maison Rouge grant, including the property in question, was invalid. U. S. v. King and Coxe, 3 How. 773, 11 L. Ed. 824; U. S. v. King and Coxe, 7 How. 833, 12 L. Ed. 934; U. S. v. Daniel W. Coxe, 17 How. 41, 15 L. Ed. 76. The first of these suits was filed on February 3, 1843, but they became final at the December terms of the Supreme Court of 1844, 1848, and 1854, respectively.

In the meantime, on October 7, 1844, under a writ of fi. fa. issued in the case of Wm. Sweeny v. Pine Grove Academy, the entire property of the academy, including lands, school building, books, etc., were sold to Lorenso D. Southwell for $665, and the said Southwell immediately transferred all rights so acquired to the said Sweeny, judgment creditor; and on November 17, 1845, Sweeny transferred all of the property so purchased "to the parish of Caldwell for school purposes and no other, and for said institution to be under the direct control of the police jury board of administrators and trustees of public schools" under an arrangement for the payment of his judgment in full.

After the decisions of the Supreme Court of the United States holding the Maison Rouge land grant invalid became final, many efforts were made by the citizens of Caldwell parish, state officials, and members of Congress from Louisiana to have the title of the Pine Grove Academy confirmed to this or a similar quantity of other property; and a joint resolution memorializing the national Legislature to that end was passed by the General Assembly of this state. As a result on July 29, 1854, Congress passed the following act (U. S. Stat. at Large, 33d Cong. 1st Sess. c. 161, p. 802), to wit:

"That the president, directors, and trustees, of the Pine Grove Academy, in the parish of Caldwell, Louisiana, be, and they are hereby, confirmed in their title [to the property] * * * donated to them by Hyams, Chew, and McCoy, claiming under the Maison Rouge grant; * * * and that the said president, directors, and trustees, be also, and they are hereby confirmed in their title to a certain tract of land * * * of the Maison Rouge grant * * * donated to them by one Daniel W. Coxe, one of the claimants of said grant, * * * and that patents be issued to them for said lands after a legal survey, under the instructions of the surveyor general of Louisiana: Provided, that this act shall amount only to a relinquishment of title on the part of the United States, and that it shall not be construed to interfere in any manner with the

rights of settlers on said lands at the date of this act."

The survey was made and approved by the surveyor general of Louisiana on January 31, 1856, but the patent authorized by the above statute was not issued until February 25, 1899.

In 1849 (the exact date does not appear from the record) the police jury of Caldwell parish passed a resolution authorizing its president to—

"convey in fee simple to 'the Pine Grove Collegiate Institute' a corporation about to be created in conformity with the provisions of the act of the Legislature of the state of Louisiana entitled 'An act providing for the organization of certain corporations in the state of Louisiana,' approved April 30, 1847, the written instrument specifying the purposes and objects for which said corporation is proposed to be created having already been drawn up and signed by the Rev. D. S. Hedges, Willis Otts, and others, and the same having been approved by Mark Boatner, Esq., district attorney, represented therein by their proper officer, all their rights, title, and interest in and to the lot of ground in said parish containing 40 acres on which the Pine Grove Academy is situated together with all the buildings belonging to said Pine Grove Academy situated on said tract of land, and also all lands and tenements donated to or belonging to at any time to said Pine Grove Academy, the said conveyance to be made as soon as said corporation is established by the approval of the Governor of the state, it being well understood that the said building and land are to be devoted exclusively to the purposes of education by said Pine Grove Collegiate Institute, in accordance with the articles of said corporation before referred to dated March 3, 1849, with the condition, however, that said Pine Grove Collegiate Institute shall be open for the reception of pupils with the present year."

There is no copy of the purported charter of the Pine Grove Collegiate Institute referred to in the above resolution in the record, nor are we able to find that any deed was ever passed to it for the property in conformity to this ordinance of the police jury. However, there does appear the following, taken from the "Minutes of the Board of Directors of Pine Grove Academy," which bears no date and carries with it nothing to show when it was passed, to wit:

"The board of directors of Pine Grove Academy met on first Monday in June: T. B. Rutland, J. P. Coats, Gen. I. Humble, and R. R. Stark.

"Gen. I. Humble presented his report verbal, having procured from the land office a plat of lot No. 23 from the surveyor general's land office.

"Resolved: That the register and receiver of the directors of Pine Grove Academy have full power and authority to make and execute good and sufficient titles to any lands belonging to the Pine Grove Academy known and embraced in lot No. 23 of the Maison Rouge grant.

"Resolved: That the register and receiver shall and may appropriate any money he shall or may receive to any repairs that shall or may be necessary for the Pine Grove Academy. Thos. B. Rutland, President Pine Grove Academy. R. R. Stark, Secretary."

But, since the surveyor general's report (pursuant to the act of Congress of July 29, 1854) was not made until January 31, 1856, it must be that the resolution just quoted was not passed until after that time, else it would not have referred to the plat of lot 23 of the Maison Rouge tract as obtained from the officer in question.

There is nothing in the record to show who at any time ever occupied the position of register and receiver of Pine Grove Academy (except that that title is assumed by Jacob Humble in certain deeds to which we shall hereafter refer), but there appear several ordinances by the police jury of Caldwell parish during the '60's designating certain persons as trustees for the Pine Grove Academy, and appointing and employing teachers for the said school.

On January 8, 1859, Jacob Humble appeared before the ex officio notary and recorder of Caldwell parish, and, styling himself as register and receiver of the Pine Grove Academy, for the price of $331.25, executed deed to John E. Wright for S.E.¼ of S.W.¼ of section 12, N.E.¼ of N.E.¼ of section 13, and

S.W.¼ of S.E.¼ of section 12, containing 120 acres more or less, N.½ of N.W.¼ of section 14, containing 105 acres, more or less, S.½ of S.W.¼ of section 11, containing 80 acres, and S.E.¼ of S.E.¼ of section 10, containing 40 acres, more or less, all in township 13, range 3 east. And on September 8, 1859, Humble appeared in the same capacity and executed deed to Francis Brian, in consideration of $250.25, for S.½ of S.E.¼, containing 80 acres, more or less, S.E.¼ of S.W.¼, containing 40 acres, more or less, north fractional half of S.E.¼, containing 54 acres, more or less, and N.E. fractional quarter of S.W.¼, containing 27 acres more or less, all in township 13, section 9, range 3 east, and containing in the aggregate 201 acres, more or less.

Thus, if the proceedings by which the record title passed from Pine Grove Academy, through Southwell and Sweeny, to the police jury of Caldwell parish, were legal, there is nothing to show that any part of the property had by it at the time of these transfers by Humble ever been alienated, and, of course, in these circumstances, the Pine Grove Academy would have had no title to convey through Humble as register and receiver, or any one else.

With matters standing in this shape, the Legislature, on March 13, 1860 (Act No. 195) passed a statute "to amend 'An act to incorporate the Pine Grove Academy in the parish of Caldwell, and for other purposes,'" and named therein Richard King, Jacob Humble, James A. Woolridge, Fleming Noble, Henry Frellsen, John J. Meredith, Wade H. Hough, John T. Simmons, J. C. Bridger, W. S. Dixon, John Stewart, James A. Boyd, Samuel B. Fluitt, Sr., Thomas Meredith, and Thomas J. Evans "and their successors * * * a body politic, and corporate under the name and style of the trustees of the Pine Grove Academy, and shall enjoy the right of perpetual succession," etc., with the right to "purchase, alienate, pledge and mortgage, and enjoy all kinds of property, real and personal, and effects of every kind and nature whatsoever," to receive donations, and to make rules and by-laws not inconsistent with law. A board of seven trustees was provided with power in themselves to fill vacancies whenever such occurred between the annual meetings therein required; but, in addition to the provision for filling vacancies thus mentioned, section 5 of the act in question provided as follows:

"That in order to keep up the perpetuity of this corporation, whenever one or more of the trustees herein named shall die, resign, or remove from the parish, the remaining trustees shall fill up the vacancy."

And it was further provided that (section 6) all property theretofore acquired by purchase, donation, or otherwise by Pine Grove Academy, should be "considered as belonging to and having been acquired by this corporation"; that the "property in possession of, and belonging to the corporation created by this act, shall at no one time exceed in value the sum of two hundred and fifty thousand dollars."

The life of the corporation (notwithstanding the provisions for perpetual succession above referred to) was by section 7 of the act limited to 25 years. This, of course, made the charter expire on March 13, 1885.

There appears in the record of this case no part of the official records, if such were kept, of the Pine Grove Academy after the passage of this act in 1860 until April 27, 1903. There was offered in evidence as bearing that date two resolutions purporting to have been passed by the board of directors of Pine Grove Academy, the first authorizing the president of the board, C. P. Thornhill, to convey to the Louisiana Central Lumber Company for the sum of $60 the pine timber on that certain 40 acres of land "designated on the official map as sec-

tion 37, Tp. 13 N., R. 3 E., and sec. 44 in Tp. 13 N., R. 4 E.," (being the property donated by McCoy, Chew, and Hyams); and the second authorizing the same officer to convey to parish board of school directors, to be used for a public school for colored people, Sec. 27, Tp. 13 N., R. 3 E., and Sec. 44 in Tp. 13 N., R. 4 E., containing in all 40.82 acres.   Thornhill testified that the other members of this board of directors besides himself were J. J. Meredith, R. R. Redditt, A. B. Hundley, and G. W. Humphries. He could not recall when they were elected, but said they had been selected by the board of trustees; that about 1890 Judge Hough, the only surviving member of the original board of trustees of the Pine Grove Academy under Act No. 195 of 1860, called a mass meeting at Columbia, at which other members of said board were selected to fill places made vacant by the death, removal, or resignation of the other members.

A brick building was erected upon the 40 acres donated by McCoy, Chew, and Hyams near the town of Columbia, and sessions of school were conducted therein intermittently for several years, beginning in the early '40's until, as we gather from the record, it became dilapidated and unfit for further use, when it was sold to one Blanks for the sum of $500.   Later a frame structure was erected and school conducted therein in a similar manner until it was destroyed or removed, and there remained at the date of the trial below, as had been the case for many years, only the lands.   It was for the price of labor and material upon the original brick building, we gather, that Sweeny brought suit and obtained execution against the property.

It was admitted by defendant that it had cut 146,895 feet of pine timber from section 37, township 13 north, range 4 east, and section 44, township 13 north, range 4 east, acquired through C. P. Thornhill, president, on July 9, 1903, and 73,105 feet from what was known as the Greenville Land Company tract, that the stumpage value at the time of cutting (in 1908 and 1909) was $1.50 per 1,000 feet, and that it sold the manufactured lumber for $12 per 1,000 feet.

An action for the recovery of defendant of the same property now in contest was brought by the board of directors of public schools for Caldwell parish, and it was found that there was no law authorizing that board to sue for property alleged to belong to Pine Grove Academy, and an exception of no cause of action to the petition in that case was sustained by the district court and affirmed by this court.   The decision in that case became final on January 11, 1915.   Board of Directors, etc., v. Louisiana Central Lumber Co., 136 La. 337, 67 South. 23.   Thereafter, at its special session in 1915, the Legislature of Louisiana passed Act No. 24, authorizing the board of public school directors of Caldwell parish to provoke a liquidation of the affairs of the Pine Grove Academy, and empowering the judicial liquidator thus to be appointed to sue for and recover all property belonging to said corporation at the expiration of its charter under Act No. 195 of 1860.

Within a short while after the passage of the act of 1915 providing for the liquidating of the Pine Grove Academy at the instance of the Parish school board, certain individuals met as a board of directors for the academy and passed a resolution designating J. J. Meredith and R. R. Redditt as liquidators for said corporation, and the persons so designated applied to and were confirmed by the district court; whereupon the school board brought suit to have the appointment so made set aside, and praying that W. L. White, predecessor of the present plaintiff, be recognized as the lawful liquidator for said academy.   To this suit the said defendants interposed an exception of no cause of action, which was sustained by the lower

court, and on appeal here we reversed that judgment and remanded the case for trial on its merits. School Board v. Meredith et al., 139 La. 35, 71 South. 209. Thereupon the defendants in that suit answered, averring that they were the lawful liquidators of said corporation, and attacking Act No. 24 of 1915 as being violative of article 48 of the Constitution. Plaintiff moved for judgment upon the face of the pleadings and that a judicial liquidator be appointed. There was judgment in favor of plaintiff accordingly, and White was appointed liquidator. On appeal that judgment was affirmed. School Board v. Meredith et al., 140 La. 269, 72 South. 960. The liquidator thus appointed brought the present suit, and, he having died, Geo. T. Martin, present plaintiff, was substituted in his stead.

### Opinion.

[1] Plaintiff carries the burden of proving his case, and must stand or fall upon the strength of his own title. It is admitted that the Pine Grove Academy was at one time the owner of the entire property in dispute, but defendant contends that it subsequently parted with its title.

No appeal was taken by the defendant from the judgment of the lower court, and in the answer to the appeal filed here it has only asked for the affirmance of that judgment, and, in the alternative, for judgment in reconvention as prayed for in its original answer. Hence the exceptions of no cause and no right of action have passed out of the case, except in so far as it may be necessary to determine such issues in disposing of the merits.

Plaintiff offered in evidence the acts of donation by McCoy, Chew, and Hyams, and Daniel W. Coxe, also act of Congress of 1854 confirming title of Pine Grove Academy to property in original Maison Rouge grant, plat of the surveyor general pursuant thereto, patent issued in the name of the academy in 1899, the proceedings showing appointment of plaintiff as liquidator, and rested its case.

[2, 3] Thereupon defendant tendered as the first link in its chain of title, and for the purpose of showing that Pine Grove Academy had been divested of all title to the property in dispute, the proceedings in the case of Sweeny v. Pine Grove Academy, under which the property was sold to Southwell, who transferred it to Sweeny, and which was by the latter conveyed to the police jury of Caldwell parish. To these offerings plaintiff objected on the ground that, having alleged in its answer a chain of title springing from Pine Grove Academy after the alleged alienation through Southwell, Sweeny, and others, it could not be heard to question the title of its said vendor. The evidence was admitted subject to the objection. This objection should have been sustained for the reason that not only does the answer allege upon a title coming from the Pine Grove Academy subsequently to the alleged alienation, but the record discloses that every tract, including those for which transfers were offered to establish title in defendant (S. E. ¼ of S. W. ¼ and S. ½ of S. E. ¼ of section 9, township 13 north, range 3 east, purchased from A. B. Hundley, N. ½ of S. E. ¼ of section 9, township 13 north, range 3 east, acquired from G. L. Alford, and the merchantable timber on section 37, township 13 north, range 3 east, bought from Pine Grove Academy), as well as all other tracts covered by deeds to other persons (except to the police jury of Caldwell parish), emanated from Pine Grove Academy since the alleged judicial transfer in Sweeny v. Pine Grove Academy; hence neither defendant nor such other persons (excepting, of course, the police jury) are in a position to question plaintiff's title prior to the execution of the deeds under which they claim. Watson v. Succession of Barber, 105 La. 460, 29 South. 949. It was not necessary that this estoppel should have been specially

pleaded. Keystone Life Ins. Co. of Louisiana v. Von Schlemmer, 122 La. 281, 47 South. 606.

[4] As to the police jury or parish of Caldwell, to whom Sweeny donated the property and assets of Pine Grove Academy, which he sought to acquire through sheriff's sale, even conceding that such a sale of the school's property were legal, neither the police jury nor any one claiming through it is before the court in this case. At the time that sale and donation took place, the legal title to the land was not in Pine Grove Academy, but in the United States government, which subsequently, by act of Congress, conveyed it to the academy; and while, as between the police jury or its transferees and the academy, subsequent acquisition of title might be said to have inured to the former's benefit, we do not think, as between defendant and the plaintiff, liquidator, the former disclosing no title in itself arising from that source, the showing made can defeat plaintiff's title, especially in view of the estoppel which the law imposes against defendant's attacking that title.

This brings us to the question of the validity of the transfers by Pine Grove Academy, through which title to portions of the property is claimed to have been lodged in defendant and other persons since the said execution sale.

[5] Plaintiff contends that the condition attached to the donations by McCoy, Chew, and Hyams and by Coxe that the lands should be used exclusively for school purposes prevented the Pine Grove Academy from alienating any part thereof. However, we do not so construe those provisions, in so far as the donation by Coxe is concerned. The phraseology used was as follows:

"To have and to hold the said tract of land for the only proper use and behoof of the said academy forever against the said donor and declarant, his heirs and assigns, or against all and every other person or persons claiming under, by, or through him, but against no other claim or claims whatsoever."

Considering the character and quantity of the land thus donated (described as having a front of about one mile on the Ouachita river by a depth of five or six miles), consisting of a broken area of poor soil and valuable mainly for the timber that was on it, we do not think that the language thus used can be construed in these circumstances to have meant that the school should derive only such benefits as might be had without alienating the property; for obviously this was the only way in which the land could be made available, except that portions of it might have been, at great expense, cleared and converted in to hill farms of poor quality and rented for prices which probably would not have justified the outlay. So that, in so far as the lands covered by the donation from Coxe were concerned, there was nothing to prevent their alienation, if it were done in a legal manner.

[6] While the resolution by the directors of Pine Grove Academy heretofore quoted, as stated, bears no date, it seems obvious that it must have been passed before the execution of the deeds to Wright and Brian, because it appears of record in Conveyance Book C, p. 492, of the parish of Caldwell, and the deeds in question were recorded in Book D, pp. 217 and 294, of the said records. Then again, although there is nothing to show that Jacob Humble was ever appointed or elected register or receiver of Pine Grove Academy, that defect, as well as all others, has long since been cured by the prescription of 30 years pleaded by defendant, it appearing that the property had been possessed by Wright and Brian and their vendors for more than 50 years prior to this litigation.

Hence the record discloses that Pine Grove Academy had been divested of its title to the property covered by the deeds to Wright and

Brian before it had been reincorporated by the Legislature in 1860.

[7] We are unable to find in the record any transfer by Humble, register and receiver, to James M. Brian, of the east one-half of southeast one-quarter of section 10, township 13 north, range 3 east, though such a deed is referred to in the conveyance by James M. Brian to W. A. McQuarters passed on January 19, 1861, and recorded in Conveyance Book D, p. 582, of the records of Caldwell parish. This 80 acres was embraced among the lands conveyed to defendant by W. T. Hardie & Co. on November 27, 1909, Notarial Book S, p. 403. The proof shows that it has been possessed and cultivated for more than 50 years, and, since it was held under a title translative of property, the same has been cured by the prescription of 10 years.

This disposes of all of the property to which titles adverse to plaintiff are disclosed by the records, and leaves for determination merely the validity of the sale of the timber of the 40 acres donated to the Academy by McCoy, Chew, and Hyams, for, as we have heretofore pointed out, there are no other transfers springing from it since the acquisition by defendant or its vendors, which the latter, because of the estoppel, is permitted to assert.

[8] Whatever effect the language in the donation from McCoy and others might have had against the alienation of the soil or the land itself, we can see no reason why the Pine Grove Academy could not sell the timber, as was done, for at that time (1903) the timber was only a fruit of the land, and was not governed by the laws of real property as was subsequently provided by Act No. 188 of 1904.

We think that, inasmuch, as the charter of the academy had long since expired by limitation (in 1885) when the purported timber sale was made, there was no one at that time authorized to act for the corporation, and hence the same was without legal effect. However, since, as to this demand, the action is for the value of the timber as for a trespass, we think that the claim of the plaintiff is barred by the prescription of one year. Plaintiff contends that prescription did not run against the academy, but, in our opinion, the situation is no different to what it would have been in the case of any other quasi public corporation, such as a municipality, etc., against which it has been held that prescription does apply when the property is not used for strictly public purposes. City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 848 at seq., 66 South. 237. This corporation was given special power to acquire and alienate property, real and personal to sue and be sued, etc., and the situation is quite different from those cases in which it has been held that prescription does not run against trespass upon sixteenth sections where the title was in the state for the benefit of particular townships. State v. Williams Cypress Co., 131 La. 62, 58 South. 1033.

The pleas of prescription of 10 and 30 years, are not supported by the record, and the validity of the Acts Nos. 195 of 1860 and 24 of 1915 has been determined in the prior cases involving this same matter above cited.

Our conclusion is that, in so far as the following property is concerned, the plaintiff has not only failed to show title in the Pine Grove Academy, but that defendant has proved a valid ownership in itself, to wit: East half of southwest quarter of section 10 in township No. 13, range 3 east, containing 80 acres, more or less; southeast quarter of southwest quarter of section 12, containing 40 acres, more or less; northeast quarter of northeast quarter of section 13, containing 40 acres, more or less; southwest quarter of southeast quarter of section 12, containing 40 acres more or less; north half of northwest quarter of section 14, containing 105 acres, more or less; south half of southwest

quarter of section 11, containing 80 acres, more or less; southeast quarter of southeast quarter of section 10, containing 40 acres, more or less; and south half of southeast quarter, containing 80 acres, more or less; southeast quarter of southwest quarter, containing 40 acres, more or less; north fractional half of southeast quarter, containing 54 acres, more or less, and northeast fractional quarter of southwest quarter, containing 27 acres, more or less, all in township 13, section 9, range 3 east, and containing in the aggregate 201 acres, be the same more or less, being the tracts covered in the sales by Jacob Humble, register and receiver to John E. Wright and Francis Brian and by James Brian to W. A. McQuarters. As to the other lands claimed, plaintiff is entitled to recover for the Pine Grove Academy for the reason that defendant cannot dispute the title of the academy, from which through mesne conveyances it attempted to acquire, and as to which no subsequent alienation has been shown.

[9] Defendant not having shown a conveyance to itself of this latter property under which the payments claimed in reconvention were made, both as to the purchase price and as to the taxes, is not entitled to recover those items.

There was no appeal from the judgment of the lower court by defendant which had the effect of rejecting its demands against its warrantors and the answer to the appeal only prayed for judgment against plaintiff as demanded in its original answer.

[10] We do not think that, because the Legislature saw fit to provide by special statute that the school board of Caldwell parish should provoke the liquidation of the Pine Grove Academy, this can be said to have identified the defunct corporation thus to be liquidated with the said board in such a manner as to estop the former from recovering property belonging to it, merely because the board had received taxes upon portions of the property assessed to defendant, or had received the proceeds of sales by the police jury or school board to others, and as to which property defendant has shown no conveyance to itself.

The plea of prescription of five years filed in this court was leveled at the execution sale in the case of Sweeny v. Pine Grove Academy, which sale we have found defendant could not be heard to assert against plaintiff, because it claims to have acquired from the academy thereafter, thereby recognizing it as owner of the property subsequently to such sale. Hence it follows that what we have said with reference to the other defenses based thereon is equally applicable to this plea.

For the reasons assigned, it is ordered, adjudged, and decreed that there be judgment in favor of plaintiff recognizing it as the owner and entitled to the possession of the following described property, to wit: The lot of 40 acres of land on which the said academy was situated and also to a tract of land with about one mile front on the west bank of the Ouachita river, and running west between 5 and 6 miles, which said lot and tract are hereinafter more particularly des- ¨ said lot and tract of land having ly surveyed, the said lot being de ⌐a as section 37, township 13 north, of ra ⌐ge 3 east, and section 44 in township 13 north of range 4 east, in the district north of Red river, La., containing 40.31 acres, and the said tract being designated as section 38 in township 13 north of range 3 east, and section 45 in township 13 north of range 4 east, and in the same district, containing 3,329.16 acres, the said lot and tract containing together 3,369.47 acres, and as approved by the plat of survey and descriptive notes on file in the General Land Office of the United States, duly approved by Wm. J. Colloh, surveyor general of Louisiana, on the 31st day of January, 1856,

less and except the following, to wit: East half of southwest quarter of section 10 in township 13, range 3 east, containing 80 acres, more or less; southeast quarter of southwest quarter of section 12, containing 40 acres, more or less; northeast quarter of northeast quarter of section 13, containing 40 acres, more or less; southwest quarter of southeast quarter of section 12, containing 40 acres, more or less; north half of northwest quarter of section 14, containing 105 acres, more or less; south half of southwest quarter of section 11, containing 80 acres, more or less; southeast quarter of southeast quarter of section 10, containing 40 acres, more or less; and south half of southeast quarter, containing 80 acres, more or less, southeast quarter of southwest quarter, containing 40 acres, more or less, north fractional half of southeast quarter, containing 54 acres, more or less, and northeast fractional quarter of southwest quarter, containing 27 acres, more or less, all in township 13, section 9, range No. 3 east, and containing in the aggregate 201 acres, be the same more or less—being the tracts covered in the sales by Jacob Humble, register and receiver, to John E. Wright and Francis Brian, and by James Brian to W. A. McQuarters, and as to which latter tracts so excepted embracing a total of 626 acres, more or less, there be and is hereby given, judgment in favor of defendant recognizing and confirming its title thereto.

It is further ordered and decreed that defendant pay all costs.

### On Rehearing.

LAND, J. Plaintiff instituted a petitory action for the recovery of certain lands, and for the sum of $10,000, the alleged value of the timber cut and removed from same.

The prescription of one year, pleaded under article 3537 of the Civil Code as amended by Act No. 33 of 1902, was sustained by this court in its former judgment, for the following reasons:

"We think that, inasmuch, as the charter of the academy had long since expired by limitation (in 1885) when the purported timber sale was made, there was no one at that time authorized to act for the corporation, and hence the same was without legal effect. However, since, as to the demand, the action is for the value of the timber as for a trespass, we think that the claim of the plaintiff is barred by the prescription of one year. Plaintiff contends that the prescription did not run against the academy, but, in our opinion, the situation is not different to what it would have been in the case of any other quasi public corporation, such as a municipality, etc., against which it has been held that prescription does apply when the property is not used for strictly public purposes. City of New Orleans v. Salmen Brick & Lumber Co., 135 La. 848 et seq., 66 South. 237. This corporation was given special power to acquire and alienate property, real and personal, to sue and be sued, etc., and the situation is quite different from those cases in which it has been held that prescription does not run against trespass against sixteenth sections where the title was in the state for the benefit of particular townships. State v. Williams Cypress Co., 131 La. 62, 58 South. 1033."

[11, 12] Article 3537 of the Civil Code, as amended by Act No. 33 of 1902, with reference to the prescription of one year provides:

"And where land, timber or property has been injured, cut, damaged or destroyed [the prescription runs] *from the date knowledge of such damage is received by the owner thereof.*" (Italics ours.)

The corporate capacity of the Pine Grove Academy expired in 1885. The tenure of its officers, trustees, and directors lapsed with its charter.

In the case of School Board v. Louisiana Central Lumber Co., 136 La. 337, 67 South. 23, this court held that, without legislative authority, no one had the right to institute an action for the recovery of lands belonging to the Pine Grove Academy or for damages sustained by reason of the removal of timber standing thereon. It was not until the year 1915 that the Legislature passed Act No. 24 of that year, authorizing the

school board of Caldwell parish to provoke a judicial liquidation of the affairs' of the Pine Grove Academy, and on July 15, 1915, the school board of said parish made application to the district court for the appointment of the judicial liquidator therefor, and, due to the various attacks made upon these proceedings, the judgment of this court confirming the appointment of the judicial liquidator herein did not become final until November 27, 1916, and this suit was filed February 2, 1917. School Board v. Meredith et al., 140 La. 269, 72 South. 960.

If George T. Martin had any such knowledge in 1915, when the school board made application for his appointment, he was powerless to act until after his appointment, which became final November 27, 1916, and his knowledge of these trespasses committed by defendant could not be imputed to plaintiff, as he was not the legal representative of plaintiff at the time.

Under this state of facts, the prescription did not commence to run, and, as the present suit was instituted by plaintiff through its judicial liquidator, within 12 months after his appointment, the action was not barred by the prescription of one year under Act No. 33 of 1902, and said plea is therefore overruled. Until the appointment of Martin as judicial liquidator, plaintiff was without any legal representative to receive knowledge of the trespass committed.

[13] We state in our former opinion:

"It was admitted by defendant that it had cut 146,895 feet of pine timber from section 37, township 13, range 4 east, and section 44, township 13, range 4 east, acquired through C. P. Thornhill, president, on July 9, 1903, and 73,105 feet from what was known as the Greenville Land Company tract; that the stumpage value at the time of cutting (in 1908 and 1909) was $1.50 per 1,000 feet, and that it sold the manufactured lumber for $12 per 1,000 feet."

Plaintiff is therefore entitled to recover $109.65 for the timber cut from the Green-ville Land Company tract and $220.34 for that cut from the other tracts at the value of $1.50 per 1,000 feet; its claim of $12 per 1,000 feet, the manufactured value of said timber, being rejected as ultra petitionem.

[14-16] Defendant complains that the court erred in rejecting its reconventional demand for taxes paid on the land recovered from the years 1906 to 1917, inclusive, said taxes amounting to the sum of $1,585.86. Defendant contends that its reconventional demand as to these taxes should have been sustained, as these taxes were due on the property, and, if defendant had not paid them, plaintiff of necessity would have to have paid them; otherwise the property would have been sold for taxes and thus have been lost to plaintiff altogether. Plaintiff, on the other hand, takes the position that the Pine Grove Academy is a quasi public corporation, that its property is public property, and is therefore exempt from taxation, and hence it should not be compelled to reimburse defendant company for taxes paid on such property by said company.

In 139 La. 35, 71 South. 209, School Board of Caldwell Parish v. Meredith et al., this court held that the Pine Grove Academy was an institution of learning incorporated by the Legislature of this state for the benefit of the people of Caldwell parish; that it was organized as "a body politic and corporate"; that it was partially endowed by the state and by the United States, and was therefore a quasi public corporation.

In 140 La. 269, 72 South. 960, Board of School Directors of Caldwell Parish v. Meredith et al., we held:

"It appears that the board of trustees [of the Pine Grove Academy] has sold some of the property belonging to the corporation, and that it now has certain property or money in its hands. This board of trustees clearly has no proprietary or other interest in the property of the Pine Grove Academy. The several members of the board were merely administrators of the property and affairs of the corporation."

On January 7, 1839, James McCoy, Robert Chew, and Henry M. Hyams donated to the Pine Grove Academy and dedicated to public use 40 acres of land for the exclusive purpose of an academy site, "without any power in said trustees or authority to alienate any part thereof." And upon this 40-acre tract was built a large brick schoolhouse.

On May 4, 1839, Daniel W. Coxe donated to the same institution, "in consideration of the great benefits to be derived from the diffusion of general education among the youth and population of our free and happy republican country, * * * with a view of diffusing knowledge among the youth of Caldwell parish, about 5,000 arpents of land, known as lot 23 in plot No. 1 of the Maison Rouge grant, for the only proper use and behoof of said academy."

The facts of the present case show that the Pine Grove Academy is not only a public institution, but that the United States and state took it under their protecting care. Its entire property and revenues are dedicated to its support, and to a public use, the cause of public education, in Caldwell parish.

Property dedicated to public use, the revenues of which serve a public purpose, is public property, although the title be not in the public. The property of a quasi public corporation is public property, and enjoys all the immunities of public property, one of which is exemption from taxation. Tulane v. Assessors, 38 La. Ann. 292; Kline v. Parish, 33 La. Ann. 562; State v. Finlay, 33 La. Ann. 113; Police Jury v. McCormack, 32 La. Ann. 624; Constitution of 1898, art. 230; Constitution of 1913, art. 230.

The property of the Pine Grove Academy being, in our opinion exempt from taxation, as public property under article 230 of the Constitutions of 1898 and 1913, the payment of the taxes on same by defendant company did not discharge any indebtedness due by plaintiff, and therefore, did not inure to the benefit of plaintiff in any way; therefore it was not a necessary expense for the preservation of said property, as claimed by defendant company. We therefore conclude that there was no error in the rejection of defendant's reconventional demand for the payment of the taxes in question.

It is therefore ordered, adjudged, and decreed that our former decree be amended by awarding to plaintiff judgment in the sum of $329.99 for timber cut and removed from the lands recovered by plaintiff in this suit, with legal interest from judicial demand until paid, and that said judgment as amended be reinstated as the judgment of the court on rehearing; defendant to pay costs.

O'NIELL and OVERTON, JJ., concur in the decree.