O’NIELL, C. J.
 

 The only question in this case is whether the prescription of 10 years, by which, according to articles 3478 to 3498 of the Civil Code, property may be acquired by a person having possession under a title apparently valid, but in fact invalid, is applicable to lands which belonged to the Pine Grove Academy when the term of its charter expired. The district court rejected the defendant’s plea of prescription, and the Court of Appeal affirmed the judgment. The case is before us on a writ of review.
 

 The Pine Grove Academy was chartered as an educational institution by Act 76 of 1838. The term of the charter was extended for 25 years by Act 195 of 1860, and therefore expired in 1885.
 

 In 1839, the corporation acquired by donations for educational purposes large areas of land, embracing the 80 acres in contest in this suit; and the corporation’s title to the land was confirmed by an Act of Congress of July 29, 1854 (10 Stat. 802, c.161).
 

 On the 29th of October, 1902, one C. O. Thornhill, appearing as “president of the board of directors of the corporation known as Pine Grove Academy, by virtue of the authority vested in him by resolution of said board adopted at a meeting thereof held on the 24th of September, 1902,” made a deed of the 80 acres of land now in contest to one A. W. Wagner. That was 17 years after the corporation had gone out of existence. Wagner sold the land to M. H. Spades on the 11th of January, 1911; the widow and heirs of Spades sold to Monroe Jarrell on the 10th of March, 1920; and Jarrell sold to the defendant, Louisiana Central Lumber Company, on the 26th of August, 1920. All of the deeds were apparently valid warranty deeds and were promptly recorded in the conveyance records. There is evidence to show — and for a decision of the question of prescription it may be conceded — that Wagner, Spades, Jarrell, and the defendant lumber company each in turn, had possession of the land. This suit to recover the land for the public schools of Caldwell parish was filed in November, 1922.
 

 It is virtually conceded, and is true, that Thornhill was not legally authorized to sell the land for the Pine Grove Academy. The members of the so-called board of directors, who attempted to authorize Thornhill to sell the land, wore “appointed” by a mass meeting of citizens of Caldwell parish, where the land is situated, 17 years after the corporation styled Pine Grove Academy had gone out of existence. Therefore the defendant’s only serious defense of the suit is the plea of prescription of 10 years.
 

 In 1913, the board of directors of the public schools of Caldwell parish, claiming that the Pine Grove Academy’s title to its lands had passed to the school board by the expiration of the charter of the Pine Grove Academy, sued several claimants of parts of the land, including M. H. Spades; but the defendants pleaded that the school board had no authority or right of action in the prem
 
 *541
 
 ises; and the plea was sustained and the suit dismissed. See Board of Directors v. Louisiana Central Lumber Co. et al., 136 La. 337, 67 So. 23.
 

 By Act 24 of 1915, the hoard of school directors of Caldwell parish was authorized to provoke a judicial liquidation of the property, funds and affairs of the defunct Pine Grove Academy, and the liquidator was authorized to sue for, take possession of, and administer and dispose of the property, for the benefit of the public schools of Caldwell parish. The plaintiff in this suit was appointed. judicial liquidator and was confirmed by a decree of court, under the terms and provisions of the statute.
 

 In February, 1917, the judicial liquidator, plaintiff in this suit, sued the present defendant for other lands that had belonged to the Pine Grove Academy when its charter expired, in 1885, and reserved the right to sue H. M. Spades for the 80 acres of land now in contest. There was judgment in favor of the plaintiff for 3,369.47 acres of land, less 626 acres decreed to belong to the defendant. See Martin v. Louisiana Central Lumber Co., 150 La. 157, 90 So. 553.
 

 The judgment of the Court of Appeal, in the present suit, is based mainly, if not entirely, upon article 3497 of the Civil Code, under the subtitle “Of the Prescription of Ten Years,” viz.:
 

 “The last condition required for prescription is, that the thing, which is the object of it, be susceptible by its nature of alienation, and the alienation of which is not prohibited by law.”
 

 When C. O. Thornhill, by authority of the so-called board of directors of the Pine Grove Academy, undertook to sell this land, on October 29, 1902, and for 17 years preceding that date, the land was not alienable or subject to sale, for nobody had authority to sell it or to authorize its sale, except the Legislature. For that reason the judgment of the Court of Appeal might well rest upon article 3497 of the Civil Code, if there were no better reason for the judgment. But a better and more direct reason for rejecting the defendant’s plea of prescription is that the Constitution itself — Article 19, § 16 — declares that “Prescription shall not run against the state in any civil matter, unless otherwise provided in this Constitution or expressly by law.” As to this civil matter, we do not find any other provision in the Constitution, or any statute declaring that prescription shall run against the state.
 

 From and after the date when the charter of the Pine Grove Academy expired, in 1885, its lands belonged to the state, and nobody had authority to sue a possessor to recover the land, or to dispose of it, except the Legislature of the state. See Martin v. Louisiana Central Lumber Co., on rehearing, 150 La. 180 and 181, 90 So. 561. There was then nobody against whom prescription could run in favor of a possessor of the land, unless prescription ran against the state.
 

 It is true, the state’s title to. the land, or authority over it, was in an administrative capacity, or as trustee, to dispose of it with due regard for the educational purposes and uses for which it was donated to the Pine Grove Academy. See Late Corporation of the Church of Jesus Christ of Latter Day Saints v. United States, 136 U. S. 1-68, 10 S. Ct. 792, 34 L. Ed. 478; Cox v. Gretna Academy, 141 La. 1001, 76 So. 177.
 

 In the Latter Day Saints Case, which was very much like the Pine Grove Academy Case, it was said (136 U. S. 59, 10 S. Ct. 809, 34 L. Ed. 496):
 

 “Hence, when such property ceases to have any other owner, by the failure of the trustees, by forfeiture for illegal application or for any other cause, the ownership naturally and necessarily falls upon the sovereign power of the state; and thereupon the court of chancery, in the exercise of its ordinary jurisdiction, will appoint a new trustee to take the place of the trustees that have failed or that have been set aside, and will give directions for the further
 
 *543
 
 management and administration of the property; or if the ease is beyond the ordinary jurisdiction of the court, the Legislature may interpose arid make such disposition of the matter as -will accord with the purposes of justice and right. The funds are not lost to the public as charity funds; they are not lost to the general objects or class of objects which they were intended to subserve or effect. The state, by its Legislature, or its judiciary, interposes to preserve them from dissipation and destruction, and to set them up on a new basis of usefulness, directed to lawful ends, coincident, as far as may be, with the objects originally proposed.”
 

 But the fact that the state’s title to the land was restricted with the obligation to administer and dispose of it for the educational purposes for which it was intended is no reason why prescription should have run against the state in favor of an adverse possessor of the land, in contravention of section 16 of article 19 of the Constitution.
 

 In State v. F. B. Williams Cypress Co., 131 La. 63, 58 So. 1034, it was said, with regard to a sixteenth section, held in trust by the state for the benefit of the public schools:
 

 “The proposition that the rule established by article 193 of the Constitution [copied literally as section 16 of article 19 of the Constitution of 1921], that prescription shall not run against the state in civil matters, save when otherwise provided in the Constitution or expressly by law, does not apply to the state in her [sovereign] capacity as trustee, holding the sixteenth sections,’ for the benefit of the schools, is untenable. Everything that the state holds in her capacity as sovereign she holds as trustee.”
 

 It is true, in the original opinion handed down in the case of Martin v. Louisiana Central Lumber Co., supra, it was said that a supposed defect in one of the titles then contested was cured by the prescription of 30 years, and that the title to 80 acres of land was made good by the prescription of 10 years. But the author of the opinion evidently overlooked the fact that the land belonged to the state during a part of the 30 years, and that the 80 acres belonged to the state during all of the 10 years. Section 16 of article 19 of the Constitution was not referred to in the opinion, and perháps it was not invoked by the plaintiff. Be that as it may, the judgment, in so far as it went against the plaintiff, was based not upon the prescription of either 10 or 30 years, but upon the court’s conclusion that the defendant had a valid title to the 626 acres of land which the court then decreed belonged to the defendant. The decision therefore is not authority for the proposition that prescription runs in favor of a possessor of land that belongs to the state.
 

 The judgment of the Court of Appeal is affirmed at the cost of the defendant, at whose instance the writ of review was issued.
 

 ROGERS, J., concurs in the decree.