Mr. Chief Justice TANÉY
 

 delivered the opinion of the court..
 

 This case is one of great importance, from the amount of property in dispute; and if the court-entertained' any doubt upon the questions of law of of fact which are presented by the record, we should regard it as our duty to hold it under advisement, and postpone the decision to another term. But the principles of law upon which it
 
 *785
 
 depends are not new in this court, and have often-been the subjects of discussion and consideration since ;the cession of Louisiana and Florida to the United States. And having, after a careful examination'of the evidence, formed a decided opinion-upon the facts in the case, we deem' it proper to dispose of it-without further delay.
 

 The claim in question, arises upon two instruments of writing, executed by the Baron de Carondelet, civil governor of Louisiana; one in 1795, and. the other in 1797the latter of which is alleged, by the defendant in error, to be a grant to the Marquis de Maison Rouge, for the land included.in a plat made out by Trudeau, the surveyor-general of the .province, and dated the 14th of June, 1797, and which survey embraces the land ip controversy.- It is insisted, on the part of die United States, that this ¡certificate of Trudeau is antedated and fraudulent j and in order to determine the state of the facts upon which the questions of law will arise, the authenticity of this survey will be the first subject of inquiry.
 

 Upon this point, a good deal of testimony , has neen taken upon both sides.' But it would extend this opinion to an unreasonable and unnecessary length,' to enter upon a minute comparison and •analysis of the testimony of the different witnesses, and of the other evidence contained in the record. It is sufficient to say, that, after an attentive scrutiny and collation of the whole testimóny, we think it is perfectly clear that this certificate of Trudeau is' antedated and fraudulent, and we refer to. the evidence of Filhiol, McLaughlin, and Pomier, as establishing conclusively that the .actual survey upon which this certificate was made out, did not take place until December, 1802, and January, 1803.; and that the one referred to by the governor,tin the paper of 1797; was for land ^ in a different place, and higher up the Washita river, We are entirely convinced that the survey now produced was not made in the lifetime of. the Marquis de Mriison Rouge, who died in 1799, but, after, his death, and at. the instance of. Louis Bouligny, who, according to the laws of Louisiana, was what is there termed the forced heir of the marquis; arid that it was made in anticipation and expectation.of .the cession of the country to the United States; the negotiations upon that subject being then actually pending, and the treaty of cession' signed on the 30th- day of April, 1803. We see no reason to doubt the truth of the witnessas to whom we have referred. On the contrary, they are supported, by the testimony of other witnesses, and by various circumstances detailed .in the record.
 

 It has, however, been argued that, inasmuch as an attested copy of this certificate, with the two instruments executed by the Baron de Carondelet, were delivered to Daniel Clarke, in August, 1803, by the Spanish authorities-at New Orleans, upon his application for the documentary proofs of the title to this land, the 'authenticity of the paper in question ought not to be impeached; ■ and that it is inconsistent with the comity due to- the officers of a foreign govem
 
 *786
 
 ment, to impute to them fraud, or connivance in a fraud, in an official act where their conduct has not been questioned by the authority under which they were acting, and to which they were responsible. This proposition is undoubtedly true, where no other interest is concerned except that of their own government or its citizens. And as regards the interest of others, the acts of the officer, in the line of his duty, will
 
 prima fade
 
 be considered as performed honestly,, and in good faith. And although this certificate and the other documents were delivered to Clarke after the country had been ceded to the United States, yet as possession had not been taken, and the evidences of titles to lands in the ceded province were still lawfully m the hands of the Spanish authorities, the documents upon that subject, obtained from the proper officer, ought tó be regarded; as genuine, unless impeached by other testimony.; and to that .extent .this court is bound to respect the certificate in question. Bat it would be pushing the. comity usually extended to the tribunals arid officers of a foreign government, beyond the bounds of justice and the usages of nations, to claim for them a total exemption from inquiry, when their acts affect the rights óf another nation or its citizens; Certainly, the political department of this government has never acknowledged this immunity from inquiry, now claimed for the Spanish tribunals' and officers; arid in every law establishing American tribunals to examine into the validity of titles to land in Louisiana and Florida, derived from the government of Spain, they are expressly Onjoiried. to inquire whether the-documents produced in support of ffie claim are antedated or fraudulent;, and we have no doubt that it is^the right of.this,court to hear and determine whether the certificate of Trudeau, although recognised and sanctioned by-the colonial authorities of Spain, is antedated and made out either with or without -their privity and consent, in order to defraud the United States, and to deprive them of lands which rightfully belonged to them un-, der the treaty; and that it-is our duty to 'deal with it as the evidence may require. We desire,- however, to be understood, when -speaking.upon this subject, as not intending to charge the present claimants with having -participated, in the fraud; but from the testimony in the record, we are fully convinced that it was committed in the .manner hereinbefore, mentioned, by Bouligny, under whom .they claim title.
 

 Regarding the case in this point of view, the right of the- defendant in error must stand altogether upon the instruments executed in 1795 and 1797, by the Baron de Carondelet; and it has not the aid of any authentic survey, to ascertain and fix the limits of the land, and to determine its location. -The instruments themselves contain no lines or boundaries, whereby any definite and Specific .parcel of land was severed.,from the public domain; and it has been settled, by repeated decisions in this court, and in cases, too, where the instrument contained clear words of grant, that if the description was
 
 *787
 
 vague and indefinite, as in the case before us, and there was no official survey to give it a certain location, if could create no right of private property in any particular parcel.of land, which, could be maintained in a court of justice. It was so held in the cases reported in 15 Peters, 184, 215, 275, 319, and in 16 Peters, 159, 160. After such repeated deeiáons upon the subject, all affirming the same doctrine, the question cannot be considered as an open one in'this court. Putting aside, therefore, and rejecting the certificate of Trudeau, for the-reasons before stated, the instruments-in question, even iff hey could be. construed as grants, conveyed no title to the Marquis de Maison Rouge for the land in question, and, consequently,the defendants in error can derive none from him;' The land claimed was not severed from the public domain, by the Spanish authorities, and set apart as private property, and, consequently, it passed to the United States, by the treaty which ceded to them all the public and unappropriated lands. It is unnecessary, therefore, for the decision. of the case, to say any thing in relation to the construction and effect of these two instruments, or the purposes for which they were intended.
 

 As relates to the claim of an equitable title arising from the number of immigrants alleged-to have been- introduced - under these instruments, it would not avail the defendant in error in this action, even if the proofs showed a performance equal to that contended for on his. part. For if these instruments were regarded, as grants, and it appeared that the-Marquis de Maison Rouge had originally selected this very district as the place where'the grant was intended tó be located; and the immigrants introduced.by him had been settled upon it in performance of the conditions of his contract; and if it should be held that he had thereby acquired an equitable right to have the quantity of land mentioned in the paper of 1797 laid off to him at this place, still it would -be no defence against the United States. For in the cáse of Choteau w. Eckhart, 2 How. 375, this court decided that an imperfect title derived from Spain, before the cession, would not be supported against a party claiming under a grant from the United States, unless it had been confirmed by act of Congress. The same point was again fully considered and decided, at'the present term, in the case of Hickey and others
 
 n.
 
 Stewart and others. These decisions stand upon the ground that such'titles aré not confirmed by the treaty itself so as to bring them within judicial cognisance and authority: and that it rests with the political department of the government to determine how and by what tribunals justice should be done to persons claiming such rights. If, therefore, this controversy, was in a court of equity, and no suspicion of fraud rested upon the claim, yet it could not be supported against a grantee of thé United States, because Congress has not confirmed it,.nor authorized any other tribunal to determine upon its validity. This case, however, is in a court of law; the petitory action brought by
 
 *788
 
 the United States in the Circuit Court nf Louisiana, being in the nature of an action of ejectment in which the decision must depend on the legal title; and that title under the treaty of cession being in the United States, an equitable title, if the defendant in error could show one, would-be no defence.
 

 it has indeed been urged in the' argument, that the act of April 29, 1816, sect. 1, (3 Story’s Laws, 1604,) confirmed this grant to the claimants to its whole extent. Upon this point we do no.t think it necessary to go into a particular and minute examination of the acts of Congress upon this subject, nor indeed of the act referred to. Because the provision in this act, that the confirmation shall extend only to the quantity of land contained in a league square, is in the judgment of the court too clear and unambiguous to admit of serious cohtroversy. The restriction of the confirmation to the quantity above mentioned, appears to be as plainly stated in the proviso as language could make it; and Congress certainly, in a .claim of- this description, addressing itself to the political power,-had a right to confirm a portion of the claim, and, at the same, time, to refuse to give the claimant a title to the residue, if they supposed it just to do so.
 

 Another question of more difficulty arises under this act of Congress, but as it has not been pressed in the argument,- we forbear to express an opinion upon it. It appears that the claimant has accepted a patent for a league square. In similar cases in Florida, the act of Congress upon that subject provided, that the'patent for the quantity confirmed should not issue unless the claimant released-all title to the residue. The law in relation to the land- in question does not, it is true, require this release, and the patent was issued and accepted under an understanding With the commissioner of the General Land-office, that the acceptance should not prejudice the claim to the residue. Yet it is a question worthy of serious consideration, how far the acceptance of the land proffered by Congress, even under these circumstances, must affect any title to the residue, which the party might be supposed to have had, and ought to influence the judgment of the court where the fact appears in the record. It is unnecessary, however, to pursue the inquiry, since, for the reasons before stated, the judgment of the Circuit Court must be reversed.