## HENSLEY vs. TARPEY.

*Third Judicial District Court, July, 1857.*

### TRESPASS—INJUNCTION.

An injunction will lie to restrain trespass in removing stones or other material from a quarry, where the averment shows that the substance of the realty is being destroyed besides the irreparable mischief.

Hensley *vs.* Tarpey.

The courts have no power, in an ordinary action, to adjudicate upon the question of title, where the act necessary to be performed is a political act, and could not be performed by the judiciary.

The object of this suit is for an injunction to restrain the defendant removing from the quarry of the plaintiff's, lime rock; and cutting down and removing timber trees, growing upon the land of the plaintiff's.

The proof shows that the plaintiff's claim is under a Mexican grant, with indefinite boundary, to ascertain and define which the action of the general government was necessary. The claim has been confirmed, and no appeal pending. The United States Surveyor, for the District of California, has caused the land to be surveyed, which, as surveyed, is the land in controversy. No further action has been taken by the general government. The defendant settled upon the land as public land, with a view of obtaining a pre-emption therefor.

The defendant contends, 1st. Admitting that the plaintiffs are the owners of the land, still they are not entitled to an injunction, the complaint and proof showing a mere trespass. 2d. They have no title to the land on which the trespasses were committed.

*Peckham & Wallace,* for plaintiff.

*Wilson,* for defendant.

HESTER, J.—Held that as to the first point made by the defendant, if the complaint contained nothing more than the general allegation of " irreparable injury," it would not be sufficient. 2 Cal. Rep., 469. It, however, shows otherwise.

Courts in England were for a long time extremely strict in confining the relief in equity to cases of tenancy, founding their interference in restraint of waste, on the privity of title between the parties. Finally, the rigor of the ancient rule was relaxed upon the avowed principle of enjoining in matters of trespass where irreparable injury resulted from the acts complained of; and upon the relaxation of the principle, Lord Eldon granted an injunction to restrain a trespasser from digging coal upon the premises of another. Mitchel vs. Does, 6 Ves., 147; 7 Ves., 307. In these cases the injury was peculiar and especial; the injunction was sustained on the ground of irreparable mischief,

and that the ruin of the property, as a mine, would be the consequence. So taking stones from a quarry. 18 Ves., 184. In these cases the mischief reaches to the substance and value of the estate, and goes to the destruction of it, in the character in which it is enjoyed. So where there is a permanent appropriation of the land. Agar vs. The Regent's Canal Company, Cooper's Eq. R., 77. It is not sufficient that the act be simply *per se* a trespass, but it must be a case of irreparable ruin to the property, in the character in which it has been enjoyed or intended to be used. In the case of Thomas vs. Oakly, 18 Ves., 184, Lord Eldon remarked, "The interference of the court is to prevent you removing that which is his estate;" and he asks the question, "why is it not equally to be applied to a quarry?"

In the case of Kane vs. Vandenburgh, 1 John. Chan. Rep., 12, the court says, on the subject of injunction, "that it is a wholesome jurisdiction, to be liberally exercised in the prevention of irreparable injury, and depends on latitude of discretion in the court."

Story, in his work on Equity Jurisprudence, says, "formerly courts were reluctant to interfere by injunction, even in cases of repeated trespass; but now courts have not the slightest hesitation, if the acts threatened to property would be ruinous or irreparable, or impair the just enjoyment of property in the future." 2 Story, sec. 928. He also says, "it will lie for trespass for digging into mines; so where a dispute exists about the boundaries of estates, and one of the claimants is about to cut down timber trees on the disputed territory. In short, it is now granted in all cases of timber, coals, ores, and quarries, where the party is a mere trespasser on the land of the owner, the acts being an irreparable damage to the particular species of property." Ib., sec. 929.

In the case at bar, the cutting down and destroying timber trees, and appropriating rocks of the quarry to the defendant's use, are acts reaching to, and affecting the substance and value of the estate. Therefore as regards the character of the supposed trespass an injunction will lie.

*Secondly.*—As to the second point assumed by the defendant, it was held that the grant of land was with an uncertain boundary. There was no segregation from the public domain by Mexican authority. That for the purpose of such segregation the exercise of political

power on the part of the United States was necessary. It is in the category of imperfect grants, and not sufficient to maintain an action of ejectment, as the full exercise of sovereign power on the part of the United States has not yet been obtained.

In the case of West vs. Cochran, 17 How., 403, it is decided that courts have no jurisdiction to deal with imperfect claims to public land, either as to fixing the boundary by survey, or for any other purpose. It was competent for Congress to provide, that before a patent issued, the exact limits of possession should be ascertained. See also Burges vs. Gray, 16 How., 48; 13, p. 498; United States vs. King et als., 3 How., 773; Hickey vs. Stewart et als., 3 How., 750. In the case of Lease et als. vs. Clark, 3 Cal. Rep., 17, the Supreme Court recognized the principle that all acts necessary to divest the sovereign of title, were political acts, and could not be performed by the judiciary; and where the whole of such acts had not been performed, the title had no standing in an ordinary tribunal.

These authorities show that this court, has no power, in an ordinary action, to adjudicate upon the question of title involved in this case. But as the extraordinary remedy by injunction is resorted to by the plaintiffs to prevent an injury to the land claimed by them, though their title is not yet, but in process of being completed; and as the real question between the parties being rather of boundary than otherwise, I am inclined to continue the injunction, especially as the plaintiff's bond will protect the defendant from any injury he may sustain, if it should turn out that the plaintiffs have no right to the land in dispute. This view is sustained by the case of Buckelew vs. Estill, 5 Cal. Rep., 108.

The injunction heretofore granted is therefore continued.