## DAUTERIVE *v.* UNITED STATES.

1. Where a petition was filed under the eleventh section of an act entitled "An Act for the final adjustment of private land claims in the States of Florida, Louisiana, and Missouri" (12 Stat. 85), praying for the confirmation of title to a tract of land in Louisiana, and it appears that the grant, as the same is alleged in the petition, was not surveyed before the treaty of cession, and that it furnishes no means whereby its location or extent can be determined, — *Held,* that the petition was properly dismissed.
2. *United States* v. *D'Auterieve* (14 How. 14), in which the same grant was under consideration, cited and approved.

APPEAL from the District Court of the United States for the District of Louisiana.

The facts are stated in the opinion of the court.

*Mr. Edward Janin* for the appellants.

*The Solicitor-General, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Claimants to land lying within the States of Florida, Louisiana, or Missouri, by virtue of any grant, concession, order of survey, permission to settle, or other written evidence of title bearing date prior to the cession of the territory out of which those States were formed, may make application to certain commissioners for the confirmation of their title, or they may at their option proceed by petition in the District Court within whose jurisdiction the lands are situated.   12 Stat. 85.

Either party aggrieved by the decree in the case may appeal directly to the Supreme Court as of right, neither affidavit or security being required of the claimant, other than for costs. Pursuant to that authority the appellants presented their petition to the District Court of the District for Louisiana, asking for the confirmation of their title to the same, except as to such parts thereof as have been granted by the United States or confirmed to other parties, as to which they pray that they may be adjudged to be entitled to indemnity in certificates of location to the same extent of land.

Sufficient appears to show that the same claim was presented to the same District Court twenty years earlier, and that on appeal to the Supreme Court the claim was rejected.   *United States* v. *D'Auterieve*, 15 How. 14.   Full report is there given of the origin, nature, and extent of the claim, and in view of that fact it is not deemed necessary to reproduce the allegations of the petition in this opinion, as the whole substance of the same is given in the opinion of the court in that case.

Due appearance was entered in behalf of the United States in this case, and the district attorney filed an answer to the petition, setting up several defences, as follows: 1. That no such grants or mesne conveyances as those under which the petitioners claim were ever made.   2. That if any such grants were ever made as alleged, which is denied, that the lands were never separated by metes and bounds or actual survey from the mass of the public domain, and are therefore null and void by reason of uncertainty of location and vagueness of description, both as to the boundaries of the grants and to their extent.

Tracts of land of great extent were granted by royal charter

to a certain association called the Western Company, and the claim of the appellants is that that company made concession of the tract in question to the grantor of their ancestor, the tract at the date of the concession being four leagues front on the right bank of the Mississippi River and extending back to the river Atchafalaya, a distance of ten or twelve miles. Neither the royal charter granting the land to the Western Company nor the concession to the grantor of their ancestor is given in evidence. Nothing of the kind is pretended, but the appellants allege that the letters-patent, bearing date in 1717, were issued in the name of the sovereign of France, by which the said company was created, and that by the fifth article of the same all the lands, coasts, ports, havens, and islands of the Province of Louisiana were given and granted to the said company, with power to give, sell, and grant the same to others, and that the company during that year or early in the next year conveyed the tract antecedently described to the grantor of their ancestor.

Their theory is that the concession was made by the French authorities before the province was ceded to Spain. History shows that France subsequently, by a secret treaty, transferred the province to Spain in pursuance of the stipulations between the contracting parties. When the first governor under the Spanish rule visited the province he reduced the tract to a front of twenty arpents, to which no objections appear to have been made by the claimant; but the successor of that magistrate, three years later, when he assumed the functions of governor of the province, enlarged the front to forty-four arpents, which perhaps was done at the request of the claimant. Galvez was the third governor of the province after the cession to Spain, and he, in the exercise of his powers, took away from the heirs of the alleged purchaser the whole front to the depth of forty arpents from the Mississippi River, leaving them nothing except what is called in legal phrase the back lands.

Throughout these several changes in the alleged title of the ancestor of the appellants and his immediate heirs, all parties appear to have acquiesced without any complaint. Nor do the appellants now claim any of the front land on the river Mississippi, nor the four leagues, nor the forty or forty-four arpents.

Instead of that, their claim is to the back lands, the side lines commencing at a point forty arpents from the Mississippi River and extending back to the river Atchafalaya. Even as reduced the claim is a large one, amounting to perhaps five hundred thousand acres, but it is not more than one-fifteenth part of the original claim, as appear by the documents exhibited in the transcript.

3. Besides denying the authenticity of the concession, the answer also denies in the most explicit terms that the tract, as described in the evidence, ever extended back to Atchafalaya River.

4. Support to that proposition is derived in the answer by referring to the regulations adopted two years before the second governor under Spanish rule enlarged the front to forty-four arpents, which provide that all grants fronting upon rivers shall be limited to a depth of forty arpents. White's Recopilacion, p. 299, art. 1.

5. That the case is in all respects the same as that previously decided by this court. *United States* v. *D'Auterieve*, 15 How. 14, 23.

No record of the concession, say the court in that case, has been produced, and after a thorough examination of the archives, both at New Orleans and in the appropriate offices for the deposit of such records, none can be found. Mention was then made of the proof exhibited in the case, which it seems consisted only of certain historical sketches given to the public of the first settlement of the province under the direction of the Western Company, together with some documentary evidence relating to the plantation of the alleged original donee through his agents, such as powers of attorney and some intermediate transfers of the titles in the charge of the agency. These are given in detail, but the court remarks that unfortunately neither the historical sketches nor the documentary evidence furnishes any information as to the extent of the concession or its boundaries. Speaking to the same point, the court say that the tract claimed as derived from the original donee is without boundaries or location, and the court proceeds to remark that the only description that has been referred to, or which the court has been able to find after a pretty thorough search, even in historical records,

is that it was a concession of a large tract upon the right bank of the Mississippi River, opposite Manchac, a point some twenty leagues above New Orleans. We have no evidence of the extent of the concession on the river or the depth back, say the court, or of any land-marks designating the tract, by which it can be regarded as severed from the public domain.

Governor Unzaga, who succeeded the first Spanish officer of that rank, ordered a survey of the tract, and it appears it was made by the public surveyor, and that it was returned and approved in the same year. Special attention to that fact was called in the argument of the prior case, and it was urged that it furnished evidence of an incipient step to establish an incomplete title under our treaty of cession, and the court entered into a full examination of the proposition and the evidence to support it, which consisted chiefly of the field-notes of the survey.

Reference is made to the claim in some of the intermediate conveyances as a plantation or concession by the name of the first agent of the company, or by the name of the "Bayou Goula village," the name of a place on the river where the tribe of Indians of that name made their headquarters. Satisfactory evidence is exhibited that the public surveyor surveyed the front to the depth of forty arpents, but it must be remembered that the front of the tract on the river to the depth of forty arpents was given up, and that it was subsequently assigned by the governor to other emigrants, and no part of it is now claimed by the appellants.

Back concessions, it seems, were seldom made, and in no instance of which there appears to be any authentic account, except to the proprietor of the front, and where made uniformly had a depth of forty arpents, reckoning from the rear line of the first concession, but the same form of title appears to have been required in the one case as in the other, and in no case could a fee-simple estate be acquired from the government without the severance of a definite tract from the mass of the public lands under the operation of a complete grant. 4 Op. Att.-Gen. 683.

Such a severance might be made by the grant itself, if it contained specific boundaries, or was well defined by courses and

distances, or other authentic and definite description of the tract. It is not pretended that either boundaries or courses and distances, or any other authentic or definite description of the tract, was given in the supposed concession. Where such evidence of the location and description of the tract is wanting in the concessions, they may and often have been supplied by what is called a judicial survey, nor is it doubted that an official survey under the order of the governor might have a like effect.

Beyond doubt, such a survey was made of the front on the river ; but this court decided, in the case already referred to, that there is not the slightest pretence that the tract as surveyed under that order of the governor extended back further than the usual depth of forty arpents from the river. No support to the theory of the appellants that it extended back to the river Atchafalaya is exhibited in the record. Nor do the field-notes or the *proces verbal* of the surveyor who made the field-notes and the survey give the proposition the least countenance.

Under our treaty of cession the United States acquired in sovereignty all the lands in the province which had not before been granted by one or the other of the two prior sovereigns and severed as private property from the royal domain. It was incumbent, therefore, upon the appellants to show that the land in question had been so granted by the antecedent authorities, else the United States are entitled to recover it. *United States* v. *King*, 7 How. 833, 849.

Subsequent concessions were made by the Spanish authorities within this claim, which, as well as the action of the authorities in resuming the possession of the larger portion of it, show conclusively that no such right as is now claimed by the appellants was recognized by those authorities.

Since the cession of the province, the right of such a claimant is the same as it would have been if the jurisdiction had not been transferred, from which it follows that rejected claims, which had no validity at the date of the treaty, impose no obligation upon the United States as the successor of the foreign sovereign.

Cases of the kind have frequently been before the court, in

which the act of Congress authorizing such litigations has been construed and the rights which it confers defined. We adopt the construction given to the act in the last-reported case upon the subject, as follows: 1. That the claimant or those under whom he holds must have been out of possession for twenty years or more. 2. That the land must be claimed by a complete grant or concession or order of survey or other mode of investiture of title in the original claimant by separation of the tract from the mass of the public domain, either by actual survey or defined, fixed natural boundaries or initial points and courses and distances by the competent authority, prior to the treaty of cession. 3. That those conditions do not apply where the title was created and perfected during the period of the actual possession of the government under which the claim is asserted. Titles in fee-simple which were complete when the jurisdiction of the province was transferred to the United States needed no confirmation, as they are fully protected by the treaty of cession. *United States* v. *Percheman*, 7 Pet. 51, 88; *United States* v. *Wiggins*, 14 id. 334, 349. 4. That the title must be complete under the former sovereign, that is, the land must have been identified by an actual survey with metes and bounds, or the description in the grant must be such that judgment can be rendered with precision by such metes and bounds, natural or otherwise; that nothing must be left to doubt or discretion in its location; and if there was no actual survey previously made which a surveyor can follow, there must be such a description of natural objects for boundaries that he can do the same thing *de novo*, or, in other words, the separation of the tract from the public domain must not be a mere conjectural separation, but complete, without any element of discretion or uncertainty. *Scull* v. *United States*, 98 U. S. 410, 418; *Smith* v. *United States*, 10 Pet. 326, 334.

Apply those rules to the case before the court, and it is clear that the decree of the court below must be affirmed. Even if it be conceded that the concession is proved, it is clear that it has no boundaries, nor does it contain any means to determine either the location or the extent of the supposed grant.

Grants of the kind which do not contain any description by which the land can be located, and are not connected with a sur-

vey, do not create private property under the treaty of cession. Where the concession contains no lines or boundaries whereby any definite and specific parcel of land was severed from the public domain, the claim of the donee cannot be sustained, it having been repeatedly decided by this court that if the description is vague and indefinite, as in the case before the court, and there is no official survey to give it a certain location, it will create no right of private property which can be maintained in a court of justice.    *United States* v. *King*, 3 How. 773, 787.

Legal survey will often be sufficient to establish the locality of the tract, and may have the effect to establish its extent; but if the claimant shows no survey under the former sovereign, it lies on him to establish the boundaries of his concession and to identify his land with such certainty as to show what particular tract was segregated from the public domain, and if he fails to do it, then he has no judicial remedy, and if he seeks confirmation he must go to Congress.    *United States* v. *Boisdoré*, 11 How. 63, 96; *Lecompte* v. *United States*, 11 id. 115, 127; *United States* v. *Forbes*, 15 Pet. 173, 184.

Attempt is not made to show that the supposed concession contained any definite boundaries or any other means of establishing its locality or of defining its extent, nor is it pretended that the tract as now claimed by the appellants was ever surveyed by the public surveyor antecedent to the treaty of cession to the United States.    Conclusive proof to the contrary is exhibited in the opinion of this court delivered by Mr. Justice Nelson, which conclusion is fully sustained by the field-notes of the survey of the front, and by the *proces verbal* and the figurative plan exhibited in the transcript.

*Decree affirmed.*