## THE SANTOS MARU.

### UNITED STATES v. OSAKA SHOSEN KAISHA LINE et al.

### No. 7978.

Circuit Court of Appeals, Fifth Circuit.

June 10, 1936.

Douglas W. McGregor, U. S. Atty., and Brian S. Odem, Asst. U. S. Atty., both of Houston, Tex.

Robert Eikel, Jr., of Houston, Tex., for appellees.

Before FOSTER, SIBLEY and HUTCHESON, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from a decree dismissing a libel in rem filed by the United States against the steamship Santos Maru, to recover a penalty of $1,000, for negligence of the master and officers in allowing an alien to land in the United States, in violation of the Act of February 5, 1917, § 10, amended by Act of May 26, 1924, § 27 (8 U.S.C.A. § 146).*

---

\* "§ 146. Prevention of unauthorized landing of aliens; prima facie proof of landing. (a) It shall be the duty of every person, including owners, masters, officers, and agents of vessels of transportation lines, or international bridges or toll roads, other than railway lines which may enter into a contract as provided in section 102 of this title, bringing an alien to, or providing a means for an alien to come to, the United States, to prevent the landing of such alien in the United States at any time or place other than as designated by the immigration officers. Any such person, owner, master, officer, or agent who fails to comply with the foregoing requirements shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine in each case of not less than $200 nor more than $1,000, or by imprisonment for a term not exceeding one year, or by both such fine and imprisonment; or, if in the opinion of the Secretary of Labor, it is impracticable or inconvenient to prosecute the person, owner, master, officer, or agent of any such vessel, such person, owner, master, officer, or agent shall be liable to a penalty of $1,000, which shall be a lien upon the vessel whose owner, master, officer, or agent violates the provisions of this section, and such vessel shall be libeled therefor in the appropriate United States court.

"(b) Proof that the alien failed to present himself at the time and place designated by the immigration officers shall be prima facie evidence that such alien has landed in the United States at a time or place other than as designated by the immigration officers. (Feb. 5, 1917, c. 29, § 10, 39 Stat. 881; May 26, 1924, c. 190, § 27, 43 Stat. 167.)"

The facts are not in dispute. The vessel arrived at New Orleans on June 11, 1932, in the course of a voyage from Brazil to Japan, with Salvatore Sprovieri, an alien, on board as a through passenger. An order was issued in writing by the immigration authorities at New Orleans and served on the officers of the ship, directing them to hold the said alien on board at all ports of the United States at which the ship might touch. On June 19, 1932, the vessel arrived at Galveston and, through the negligence of her officers and crew, the alien was allowed to escape and land in the United States, without permission of the immigration authorities and in violation of law. The alien was subsequently arrested in Galveston and deported on another vessel of the same line. The Secretary of Labor was of opinion that it would be impractical and inconvenient to prosecute the matter criminally. Notice was given the steamship line of the intention of the government to proceed against it and the Santos Maru for violation of the section. The libel was then filed and the ship attached. Subsequently she was released on bond.

The District Court in dismissing the libel relied on the following authorities: Taylor v. United States, 207 U.S. 120, 28 S.Ct. 53, 54, 52 L.Ed. 130; Moffitt v. United States (C.C.A.) 128 F. 375; Dollar S. S. Line v. Elting (C.C.A.) 51 F.(2d) 1035; The Alfonso XIII (D.C.) 53 F.(2d) 124; The Habana (C.C.A.) 63 F.(2d) 812.

The section relied on to sustain the libel first appeared in its present form in the Act of February 5, 1917, § 10. The amendment of May 26, 1924, § 27, made no substantial change in the law (8 U.S.C.A. § 146). Taylor v. United States was decided in November, 1907, ten years before the present act was adopted, and arose under the Immigration Act of March 3, 1903, § 18 (32 Stat. 1217). So far as is necessary to quote, that law provided: "That it shall be the duty of the owners, officers and agents of any vessel bringing an alien to the United States to adopt due precautions to prevent the landing of any such alien from such vessel at any time or place other than that designated by the immigration officers." Violation was punishable by fine and imprisonment. The Taylor Case involved a criminal prosecution, based on the desertion of seamen who had been given shore leave. The Supreme Court construed the phrase in the act "bringing an alien to the United States" to mean "transporting with intent to leave in the United States," and held that an intent on the part of the owners and officers of the vessel that the alien transported should enter the United States was necessary before the law was violated, consequently it did not apply to the crew of a vessel.

The present act adds the phrase, "or providing a means for an alien to come to, the United States," after the phrase "bringing an alien to the United States." The act is somewhat ambiguous and deals with transportation by land as well as by sea, but Congress was endeavoring to solve an ever-present problem in a practical way. If through passengers on a ship could leave her at a port of the United States at will, that would be an easy way to evade the immigration laws.

The Commissioner General of Immigration, under the direction of the Secretary of Labor, is authorized to adopt rules and regulations for carrying out the provisions of the immigration laws. 8 U.S.C.A. § 102. Under that authority he has established a rule that alien through passengers on vessels touching at ports of the United States may land temporarily from the vessel, for the limited time she is in port, without a vised passport, if the examining immigration officer is satisfied he will depart on the ship. If the immigration officer is not so satisfied he shall notify the master of the vessel in writing that the privilege is denied the alien and of the provisions of the law. Rule 3 (6) (H), Im.Rules, Jan. 1, 1930, G.O. 201, March 3, 1933. That procedure was followed in this case and permission to land was denied.

■ It is usual to permit through passengers to have shore leave, while the vessel is in port, but it is elementary that immigration officers, acting under authority of law, have authority to deny this privilege. It is necessary and proper that in exercising their discretion immigration officers boarding a vessel to examine the persons on her should be guided by uniform rules. The master of the vessel had authority to enforce the order, even by locking up the passenger, if necessary. Thereafter, negligence in allowing the alien to escape was inexcusable. The rule above referred to is reasonable and a valid exercise of the authority vested in the Commissioner General of Immigration.

■ We consider that when a vessel arrives at a port of the United States with an alien

through passenger on board, who unlawfully lands in the country, the ship has provided a means for the alien to come to the United States, within the meaning of the law. It is not necessary to show that the owners of the ship intended that the alien should land in the United States before the penalty for negligently permitting him to land may be imposed. Under the present law, on the facts presented in this case we do not consider that Taylor v. United States controls.

The other authorities relied on by the District Court are not in point, except the case of The Habana (C.C.A.) 63 F. (2d) 812, the ruling in which is directly contrary to our views just expressed. With all due respect, we must decline to follow that case.

Since the statute creates a lien on the vessel for the penalty incurred through negligence of the officers and the action is in rem, no question arises as to the liability of the Santos Maru.

The judgment is reversed, and the cause remanded, with instructions to enter judgment for the United States.