## DICK v. UNITED STATES LINES CO.

District Court, S. D. New York.
Feb. 3, 1941.

Harry Sacher, of New York City, for plaintiff.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Walter X. Connor and Walter P. Hickey, both of New York City, of counsel), for defendant.

LEIBELL, District Judge.

Plaintiff sues for damages for false imprisonment. He claims that he was illegally confined to his room aboard the S. S. "President Roosevelt" by the ship's officers while that vessel was in the ports of Hamburg, Germany, LeHavre, France, Southampton, England, and Cobh, Eire, in November 1938. In May of that year while on shore leave in Hamburg, Germany, he had been arrested for a violation of the currency laws of Germany and sentenced to six months in jail. At the time of his arrest he was a member of the crew (a musician) of the S. S. Washington, also owned and operated by the defendant.

Plaintiff's former position as a musician and a member of the crew of one

of defendant's vessels, the S. S. Washington, gave him no right to have defendant repatriate him and transport him without charge to the United States after he was released from a German prison. If plaintiff was destitute on his release from prison, the obligation rested by statute (46 U.S.C.A. § 678) upon the United States Consul to provide subsistence in the foreign port, within the consul's district, and passage to a United States port at the expense of the United States. The statute contains the provision: "The seamen shall, if able, be bound to do duty on board the vessels in which they may be transported, according to their several abilities". By Section 679 the master of a United States vessel bound to a port of the United States is required to transport a destitute seaman at the request of an American Consul in a foreign port for a certain prescribed compensation payable by the United States. No such compensation was offered or paid by or on behalf of plaintiff. At the request of the American Consul plaintiff was permitted to sign articles as a member of the crew of the President Roosevelt, as a workaway, at the same nominal compensation paid to other members of the crew who were musicians in the ship's orchestra.

 The confinement of the plaintiff to a room in the hospital quarters aboard the S. S. President Roosevelt while the vessel was in Hamburg, Germany, was by direction of the German officials and in part at least was under their supervision. The plaintiff had been in the absolute custody of the German police until he was placed aboard the vessel for deportation. He could have been detained by the police in a building ashore until the gang planks were hauled ashore, but instead he was put aboard the ship and there detained in a room as one of the conditions of his transfer to the ship. By direction of the German police he was not to be released until the ship sailed. The jurisdiction of the German Reich within the port of Hamburg was exclusive and absolute. The Exchange v. M'Faddon, 7 Cranch 116, 3 L. Ed. 287; Wildenhus' Case (Mali v. Keeper of the Common Jail), 120 U.S. 1, 7 S.Ct. 385, 30 L.Ed. 565; Patterson v. Bark Eudora, 190 U.S. 169, 23 S.Ct. 821, 47 L. Ed. 1002; Cunard S. S. Co. v. Mellon, 262 U.S. 100, 43 S.Ct. 504, 67 L.Ed. 894, 27 A. L.R. 1306. Under the circumstances the master of the vessel was justified in confining plaintiff to a room in order to enforce the orders of the German police. The Santos Maru, 5 Cir., 84 F.2d 482; The Western World[1]. It is to be presumed, in the absence of a showing to the contrary, that the German police were acting within their authority in directing that the plaintiff be confined to a room on the vessel. Strother v. Lucas, 12 Pet. 410, 9 L.Ed. 1137; United States v. King, 3 How. 773, 11 L.Ed. 824. The authority ceased when the S. S. President Roosevelt sailed from Hamburg and plaintiff's confinement was promptly ended by unlocking the door of his room.

 Plaintiff, as a workaway, had signed articles and was in the employ of the vessel's owners as a member of the crew. The Tashmoo, D.C., 48 F.2d 366. As such he was subject to proper discipline. The record discloses that after the vessel left Hamburg the chief officer had been informed by some members of the crew that plaintiff intended to desert ship at LeHavre and wait there to rejoin his old ship, the President Washington. The chief officer decided to have plaintiff confined to his room while the vessel was at LeHavre, until his status could be determined by the French authorities. They in turn gave instructions that plaintiff was not to be permitted to go ashore in LeHavre. Under the circumstances the chief officer was justified in continuing plaintiff's confinement while the vessel was in LeHavre. It has been held that, in the case of an alien passenger, it would be a proper precautionary measure for the master to confine to a room aliens who on the orders of the immigration officers were not permitted to land. The Santos Maru, supra.

Plaintiff suffered no physical hardship during the period of his confinement to his room in the ship's hospital or at any time while aboard the ship. Indeed his physical well being was the subject of special medical care and treatment. His food and accommodations were of the best, such as any first class passenger would have received if a patient in the ship's hospital.

Plaintiff was not confined to his room or in any way deprived of his liberty of movement in his section of the ship, while the ship was in the harbor of Cobh or at the dock at Southampton.

---

[1] No opinion for publication.

I am of the opinion that plaintiff has no cause of action against the defendant and that the defendant is entitled to judgment dismissing the complaint on the merits. Findings of fact and conclusions of law have been signed.