**BLAIR HOLDINGS CORPORATION,**
Plaintiff,

v.

Stella **RUBINSTEIN** and Edward J. Ennis, as Executors of the Estate of Serge Rubinstein, Deceased, Norfolk Insurance Company, Inc. and Virgil D. Dardi, Defendants.

United States District Court
S. D. New York.
July 19, 1955.

---

Cahill, Gordon, Reindel & Ohl, New York City, Jerome Doyle, Asa D. Sokolow, Denis G. McInerney, New York City, of counsel, for plaintiff.

Edwin B. Wolchok, New York City, Edward J. Ennis, New York City, of counsel, for defendants Stella Rubinstein in and Edward J. Ennis.

BICKS, District Judge.

Defendant, Serge Rubinstein, heretofore moved to dismiss the action for lack of federal jurisdiction. The complaint asserts jurisdiction solely on the ground that plaintiff is a corporation organized under the laws of the State of New York and that "the defendant Serge Rubin-

stein \* \* \* is not a citizen of the United States of America or of the State of New York". The motion came on to be heard before Judge Edelstein. Being of the view that a trial of the issue of Rubinstein's citizenship by affidavits was unsatisfactory and that the plaintiff should have an opportunity to prove the jurisdictional facts by discovery proceedings, he ordered the motion held in abeyance pending the taking by plaintiff of depositions. He further ordered that the motion "may be renewed at the appropriate time in a regular motion part". Commenting on the jurisdictional allegations, Judge Edelstein stated, "This negative characterization of Rubinstein's status is inadequate to support the alienage jurisdiction of the Federal Court. \* \* \* The absence of a positive averment of Rubinstein's citizenship renders the complaint jurisdictionally defective."[1]

Consistent with the aforementioned order plaintiff proceeded to take the depositions of Rubinstein and his mother. The depositions, which consist of 388 pages and in connection with which plaintiff caused 35 exhibits to be marked in evidence, were completed in the latter part of July, 1954. Defendant thereupon renewed its motion. Upon the representation that plaintiff's counsel needed additional time to complete an investigation into whether Rubinstein was a citizen or subject of Russia, Portugal, Austria, France or Israel, the learned Judge before whom the renewed motion was brought endorsed the papers "Motion to renew premature. Denied."

A second renewal of the motion is now before the Court. Plaintiff does not urge that the present motion is premature nor has it applied for a continuance for the purpose of further investigation. In effect plaintiff has rested its case. We, therefore, proceed to a consideration of the motion on the merits.[2]

The decision turns upon the answer to the question: Was Rubinstein a citizen or subject of a foreign state within the meaning of 28 U.S.C.A. § 1332(a) (2)?[3]

Our first inquiry is into the status of Rubinstein at the commencement of the action. Plaintiff contends that it is not incumbent upon it to establish that the defendant is a citizen or subject of a particular foreign state. To require it to do so, it suggests, is imposing too heavy a burden. In view of the nefarious international machinations ascribed to Rubinstein the task of the plaintiff may indeed be difficult but, however onerous, it is a burden from which plaintiff may not be relieved. Hard facts do not justify a deviation from the well established and long accepted principle that one seeking to invoke the jurisdiction of the federal court must show by a preponderance of the evidence that the case falls within its jurisdiction. McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135.

Rubinstein was born a subject of the Czar of Russia. He later acquired

1. Judge Edelstein's opinion is reported in full in, D.C., 122 F.Supp. 602, 603.

2. Rubinstein met his death shortly after the pending motion was argued. The parties are in agreement that the cause of action alleged in the complaint survived the death of Rubinstein and the executors named in his last will have been substituted as defendants. If jurisdiction existed when the action was commenced, the subsequent death of Rubinstein does not operate as a divestiture. Clarke v. Mathewson, 1838, 12 Pet. 164, 37 U.S. 164, 9 L.Ed. 1041.

3. 28 U.S.C.A. § 1332(a) (2) insofar as pertinent reads:

"Diversity of citizenship; amount in controversy

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, and is between:

\* \* \* \* \*

"(2) Citizens of a State, and foreign states or citizens or subjects thereof".

Section 1332 implements the provision of Article III, Section 2 of the Constitution that "The Judicial power shall extend \* \* \* to Controversies \* \* \* between a State, or the Citizens thereof, and foreign States, Citizens or Subjects."

Portuguese citizenship. Relying on the doctrine that citizenship once established is presumed to continue, Hauenstein v. Lynham, 1879, 100 U.S. 483, 484, 25 L.Ed. 628; City of Minneapolis v. Reum, 8 Cir., 1893, 56 F. 576, 577, plaintiff urges that Rubinstein was a citizen or subject of either the Union of Soviet Socialist Republics or Portugal at the commencement of the action.

■ The presumption that Rubinstein continued to be a citizen or subject of the U.S.S.R. must yield in face of the following proof: (a) Rubinstein and his entire family fled from Russia in 1918, soon after the Revolution without permission of the Soviet authorities; (b) under the applicable Soviet statutes and laws relating to forfeiture of Soviet citizenship, Rubinstein ceased to be a citizen of the U.S.S.R.;[4] (c) the issuance to Rubinstein of a so-called "Nansen" passport which is alleged to have been given him in recognition of his status as a stateless person by an agency created by the League of Nations; (d) Rubinstein's subsequent acquisition of Portuguese citizenship; and (e) Rubinstein's registration as a stateless person with the United States Department of Justice as required by Section 265 of the Immigration and Naturalization Act of 1952, 8 U.S.C.A. § 1305.

■ The presumption that Rubinstein continued to be a citizen of Portugal likewise has been overcome. · It was demonstrated that the Portuguese Consul General in New York issued a document certifying that Rubinstein's citizenship had been cancelled. While plaintiff regards this certification with suspicion it does not deny that it was in fact issued. Each country has the undoubted right to determine who are its nationals and "it seems to be general international usage that such a determination will usually be accepted by other nations". Murarka v. Bachrack Bros., 2 Cir., 1954, 215 F.2d 547, 553. Since regularity of the procedure of foreign agencies is to be presumed, United States v. King, 1845, 3 How. 773, 44 U.S. 773, 784–786, 11 L.Ed. 824, the certificate of the Consul General is sufficient proof of the facts stated therein to wit: "The Portuguese citizenship of Serge Rubinstein was cancelled by the Government of the Republic of Portugal and it has never been reinstated".

The presumption of continuing citizenship of either the U.S.S.R. or Portugal having been successfully rebutted, plaintiff is stripped of any proof identifying Rubinstein as a citizen or subject of either of said foreign states.

We turn next to the question whether for the purpose of federal jurisdiction under 28 U.S.C.A. § 1332(a) (2) a stateless person is a citizen or subject of a foreign state. Plaintiff takes the position that the jurisdiction of this Court extends to a suit between a citizen of the United States and any alien, even if such alien is stateless.

■■ The right of the plaintiff to enforce the claim set out in its complaint in a federal court is not derived from the Constitution. Kline v. Burke Construction Co., 1922, 260 U.S. 226, 233, 43 S.Ct. 79, 67 L.Ed. 226. Inferior federal courts were established by Congress consistent with the provisions of the Judiciary Article of the Constitution and have only such jurisdiction as the Congress constitutionally confers upon them. "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined". Healy v. Ratta, 1934, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248. The Congressional grant of diversity jurisdiction must be strictly construed. Shamrock Oil & Gas Corp. v. Sheets, 1941, 313 U.S. 100, 108–109, 61 S.Ct. 868, 85 L.Ed. 1214; City of Indianapolis v. Chase National Bank, 1941,

---

4. Plaintiff attempted to put the Soviet law in issue, but its expert was willing to go no further than to state: "the facts have not yet been established in sufficient detail to permit a final conclusion on the basis of the record that Serge Rubinstein had lost his status as a citizen or subject of U.S.S.R."

314 U.S. 63, 76–77, 62 S.Ct. 15, 86 L.Ed. 47; see the dissenting opinion of Mr. Justice Frankfurter in National Mutual Insurance Co. v. Tidewater Transfer Co., 1949, 337 U.S. 582, 654, 69 S.Ct. 1173, 93 L.Ed. 1556.

Neither the letters and papers of the Framers of the Constitution nor the records of the convention itself are a fruitful source of information for ascertainment of the "precise limits" of the alienage jurisdiction contemplated by Article III, Section 2. (See Friendly, "The Historic Basis of Diversity Jurisdiction", 41 Harvard Law Review 483.) The dominant considerations which prompted the provision for such jurisdiction appear to have been:

(1) Failure on the part of the individual states to give protection to foreigners under treaties; Farrand, "The Framing of the Constitution" 46 (1913); Nevins, "The American State During and After the Revolution" 644–656 (1924); Friendly, 41 Harvard Law Review 483, 484.

■ (2) Apprehension of entanglements with other sovereigns that might ensue from failure to treat the legal controversies of aliens on a national level. Hamilton, "The Federalist" No. 80 [5]. It seems clear against this background that the terms "aliens" and "foreigners", when used as abbreviated references to the more ponderous phrase, "foreign states or citizens or subjects thereof" appearing in Section 1332(a) (2), are intended to refer to those aliens or foreigners who are citizens or subjects of some specific foreign state.

The plaintiff points out quite accurately that the first judiciary act enacted by Congress in 1789 [6] purported to give the circuit courts jurisdiction of all suits in which "an alien is a party". This Congressional grant of jurisdiction applied only to suits between citizens of the United States on the one hand and aliens on the other and did not go beyond the restricted constitutional grant of power contained in Article III, Section 2. Hodgson v. Bowerbank, 1809, 5 Cranch 303, 9 U.S. 303, 3 L.Ed. 108; Mossman v. Higginson, 1800, 4 Dall. 12, 4 U.S. 12, 1 L.Ed. 720; Montalet v. Murray, 1807, 4 Cranch 46, 8 U.S. 46, 2 L.Ed. 545. No cases have been cited by counsel or has the Court been able to find any in which the meaning of the word "alien" as used in the Judiciary Act was at issue. In Wilson v. City Bank, 1838, 30 Fed.Cas.No. 17,797, page 116, Circuit Justice Story sustained a demurrer to a bill which alleged merely that the plaintiffs were of London, in England, and aliens to each and all of the United States, stating "The bill ought to have alleged that the plaintiff was a subject or citizen of some one foreign state". Implicit in this holding is that the word "aliens" as used in the Act was not intended as a synonym for "non-citizens of the United States", for otherwise the bill patently would have been sufficient. See also Hinckley v. Byrne, 1867, 12 Fed.Cas.No.6,510, page 194.

In the 1875 amendment to the Judiciary Act,[7] Congress discarded the less exact word "alien" and adopted almost verbatim the language of the Constitu-

5. Alexander Hamilton said, "As the denial or perversion of justice by the sentences of courts, as well as in any other manner, is with reason classed among the just causes of war, it will follow that the federal judiciary ought to have cognizance of all causes in which the *citizens of other countries* are concerned. * * * But it is at least problematical, whether an unjust sentence against a foreigner, where the subject of controversy was wholly relative to the *lex loci*, would not, if unredressed, be an aggression upon his sovereign, as well as one which violated the stipulations of a treaty or the general law of nations. * * * So great a proportion of the cases in which foreigners are parties, involve national questions, that it is by far most safe and most expedient to refer all those in which they are concerned to the national tribunals". (Emphasis of the phrase "citizens of other countries" is supplied.)

6. Act of September 24, 1789, 1 Stat. 73.

7. Act of March 3, 1875, 18 Stat. 470. Jurisdiction was extended to controversies "between citizens of a State, and foreign states, citizens, or subjects."

tion investing the federal courts with alienage jurisdiction. This provision was continued substantially unchanged in the revised Judicial Code of 1948.[8]

The cases relied on by plaintiff which use the words "alien" or "foreigner" in substitution for the statutory or constitutional phrase do not involve stateless persons, a quite understandable circumstance since problems associated with that status are of recent vintage. See Houghton Mifflin Co. v. Stackpole Sons, Inc., 2 Cir., 1939, 104 F.2d 306, 309, certiorari denied 1939, 308 U.S. 597, 60 S.Ct. 131, 84 L.Ed. 499. Thus, in Vidal v. South American Securities Co., 2 Cir., 1922, 276 F. 855, plaintiff was a citizen of Uruguay, in Roberto v. Hartford Fire Insurance Co., 7 Cir., 1949, 177 F.2d 811, 814, certiorari denied 1950, 339 U.S. 920, 70 S.Ct. 622, 94 L.Ed. 1343, plaintiff was found to "at least have the status of a subject of" Italy and in Keating v. Pennsylvania Co., D.C.N.D.1917, 245 F. 155, plaintiff was a subject of the King of Great Britain.

Plaintiff further contends that to deny federal jurisdiction in this case is to render the defendant immune from suit in the federal court. Although it is true that the effect will be to deny the federal forum to the plaintiff, it is not tantamount to a grant of immunity to the defendant. The result is not to deny justice to the plaintiff; it may sue in the state courts. The denial of jurisdiction goes no further than to prevent access to a tribunal of limited powers whose jurisdiction, for reasons good or bad, has not been thought appropriate to such controversies. Ex parte Edelstein, 2 Cir., 1929, 30 F.2d 636, certiorari denied 1929, 279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994. Two recent cases illustrate this point in a context similar to that presented in the instant case.

In Medvedieff v. Cities Service Oil Co., D.C.S.D.N.Y.1940, 35 F.Supp. 999, the plaintiff sought to remand the cause to the state court after it had been removed on the defendant's petition. It appeared that plaintiff was a native of Russia who had become a naturalized citizen of Italy. Faced with evidence that the plaintiff's Italian citizenship had been revoked, the defendant was unable to establish that plaintiff was a citizen or subject of a foreign state. The motion to remand was therefore granted.

In Klausner v. Levy, D.C.E.D.Va.1949, 83 F.Supp. 599, 600, plaintiff was a citizen of Palestine when he instituted the action. The Court, after holding that Palestine was under a British mandate and that plaintiff therefore was not a citizen or subject of a foreign state within the meaning of the jurisdictional provisions of the Federal constitution and statutes[9], stated, "Obviously, then, when this action was filed the plaintiff was not a citizen or subject of a foreign state, and this Court was without jurisdiction, no ground of jurisdiction save diversity of citizenship being urged or shown."

The federal courts have not hesitated to deny alienage jurisdiction where one of the litigants did not clearly meet the jurisdictional requirements of the statute. In Pannill v. Roanoke Times Co., D.C.W.D.Va.1918, 252 F. 910, and Cowell v. Ducas, D.C.S.D.N.Y.1932, 2 F.Supp. 1, a citizen of the United States who was not a citizen of a particular state was denied access to the federal courts; in Hammerstein v. Lyne, D.C.W.D.Mo.1912, 200 F. 165, and Alla v. Kornfield, D.C. D.Ill.1949, 84 F.Supp. 823, a suit against a citizen of the United States who was not a citizen of a particular state was held not to fall within the grant of diversity jurisdiction; in Paul v. Chilsoquie, C.C.Ind.1895, 70 F. 401, an Indian who had not been naturalized was not permitted to remove a suit to the federal court on the ground of diversity and,

---

8. Act of June 25, 1948, 62 Stat. 930.

9. In a subsequent case Palestine was found to be a foreign state notwithstanding the fact that it was under a British mandate. Kletter v. Dulles, D.C.D.C. 1953, 111 F.Supp. 593. That case did not involve the problem here presented.

until recently,[10] citizens of the District of Columbia, Hepburn & Dundas v. Ellzey, 1805, 2 Cranch 445, 6 U.S. 445, 2 L.Ed. 332, and citizens of our territories, Costan v. Manila Electric Co., 2 Cir., 1928, 24 F.2d 383, were unable to sue or be sued on the ground of diversity.

One further contention of plaintiff requires comment. It suggests that a logical extension of a determination of this motion in defendant's favor would require a construction of the Eleventh Amendment [11] to the Constitution which would permit the defendant to sue one of the United States. Since the Eleventh Amendment has been liberally construed to give a state immunity from suit by one of its own citizens, Hans v. State of Louisiana, 1890, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842, and from a suit by a foreign state, Principality of Monaco v. State of Mississippi, 1934, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282, plaintiff urges that Article III, Section 2, should also be liberally construed. This contention fails to recognize the difference between sovereign immunity and jurisdiction founded on diversity. A literal construction of the Eleventh Amendment would have done violence to the fundamental concept that "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent" and that this "exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every state in the Union." Hans v. State of Louisiana, supra, 134 U.S. at page 13, 10 S.Ct. at page 506.

Paraphrasing the language of Chief Justice Vinson in the Tidewater

case, [12] that we might now write Section 2 of Article III to include stateless persons seems hardly a justification for an interpretation inconsonant with the intent of the framers.

Accordingly, defendant Rubinstein's motion to dismiss the complaint as against him is granted.

10. By the Act of Congress of April 20, 1940, 54 Stat. 143, Congress extended the grant of diversity jurisdiction to citizens of the District of Columbia and the Territories. This Act was held constitutional in National Mutual Insurance Co. v. Tidewater Transfer Co., supra. The Court discussed the case of Hepburn & Dundas v. Ellzey, supra, and specifically affirmed it. The constitutionality of the amendment was sustained under Article I, Section 8 and not under Article III, Section 2.

11. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

12. National Mutual Insurance Co. v. Tidewater Transfer Co., supra.